Colby Cheese Box Company, Respondent, vs. Dallendorfer and others, Appellants.

Ley, Respondent, vs. Dallendorfer and others, Appellants.

Blum, Respondent, vs. Dallendorfer and others, Appellants.

*November 8—December 5, 1933.*

332

For the appellants there was a brief by *Genrich & Genrich* of Wausau, and oral argument by *Fred W. Genrich.*

For the respondents there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

OWEN, J. On the evening of December 6, 1930, the plaintiffs George Ley and John Blum were driving a Buick

automobile owned by the plaintiff Colby Cheese Box Company, south on highway 13 between the village of Unity and the city of Marshfield. While so driving they ran into a truck belonging to the defendants proceeding in the same direction. Three horses were being led behind the truck. One was tied to the cab of the truck and the other two were being led by one Allar, an employee of the defendants, who stood in the rear part of the truck. It was a dark, foggy, and misty night. The Buick car was equipped with strong headlights which had been tested shortly before. On an ordinary night they would reveal ordinary objects about 200 feet ahead. The cab of the truck was colored blue, and the platform was a natural wood color. The horses being led behind the truck were of a dark color. Plaintiff Ley was driving the Buick car and plaintiff Blum was riding in the front seat beside him. They both maintained a lookout, but failed to see the truck until they got within twenty or twenty-five feet of it. Upon discovering the truck Ley attempted to turn to the left to pass it, but failed to clear it. A collision occurred which placed both the truck and the Buick car in the ditch.

The jury found that the truck was operated without a tail light, the absence of which constituted a proximate cause of the collision, and that the leading of the horses behind the truck also constituted a proximate cause of the collision. The jury also found that Ley was negligent in operating the automobile he was driving at an excessive speed, which constituted a proximate cause of the collision. The jury acquitted both Ley and Blum of negligence in failing to keep a proper lookout. As the Buick automobile was not being driven in the pursuit of the business of the Colby Cheese Box Company, for which reason the negligence of Ley was not the negligence of the company, judgment went in favor of that company against the defendants. The court set aside the answer of the jury convicting Ley of

negligence in operating the automobile at an excessive speed, and rendered judgment in favor of Ley and Blum against the defendants.

The first question to be considered is whether the defendants were guilty of a want of ordinary care. The jury found that the truck was being operated without a tail light. This finding is challenged as being unsupported by the evidence. No good purpose will be served in reciting the evidence bearing upon this question. Suffice it to say that it is conflicting and, therefore, is sufficient to sustain the answer of the jury that the truck was being operated without the presence of a tail light and that the absence of the tail light constituted a proximate cause of the accident. This is all that is necessary to establish actionable negligence on the part of the defendants, and we need not consider whether the violation of the law (sec. 85.39 (3), Stats.) in leading horses behind the truck constituted a proximate cause of the accident. Plaintiffs' rights to recover are established except in so far as they may be affected by their own acts of contributory negligence.

The jury found that the plaintiff Ley, driver of the Buick car, was negligent in operating it at an excessive rate of speed. The court changed the answer of the jury to this question from Yes to No, on the ground that the credible evidence in the case showed that Ley was driving the Buick car at a speed of thirty-five miles per hour, and that such a rate of speed did not violate sec. 85.40, Stats., which provides, "It shall be unlawful for any person to operate any vehicle upon a highway carelessly and heedlessly, in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection or at speeds greater than those specified in this section or in a manner so as to endanger or be likely to endanger the property, life, or limb of any person, or without due regard to the traffic, sur-

face, width of the highway, and any other condition of whatever nature then existing." We are convinced that by setting aside this answer the court invaded a field exclusively within the province of the jury. The section of the statute quoted does not fix any rate of speed which is unlawful under the circumstances of this case. The court assumes that Ley was driving the car at a speed of thirty-five miles an hour. It was a dark night. The atmosphere was misty and foggy. Necessarily the concrete was damp and somewhat slippery. He knew that his lights would not be as efficient as they would be on a clear night. Under all these circumstances, we think that whether a speed of thirty-five miles an hour was one "to endanger or be likely to endanger the property, life, or limb of any person" was a jury question. It is to be remembered that the jury is composed of men of varied experiences, and that their composite conclusion upon a subject such as this should not lightly be disregarded.

Defendants contend that both Ley and Blum were guilty of a want of ordinary care as a matter of law in failing to maintain a proper lookout. This contention received extended consideration by the trial judge in his opinion rendered on motions after verdict, and he declined to so hold. Appellants rely upon *Lawson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629; *Kleist v. Cohodas,* 195 Wis. 637, 219 N. W. 366; and *Knapp v. Somerville,* 196 Wis. 54, 219 N. W. 369.

In the *Lawson Case* the principle was laid down that the exercise of ordinary care on the part of the driver of an automobile requires him to operate his machine at night "at such a rate of speed that he (can) bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his light be such that he can see objects for only a distance of ten feet, then he should

so regulate his speed as to be able to stop his machine within that distance, and if he fails to do so, and an accident results from such failure, no recovery can be had."

In *Kleist v. Cohodas,* 195 Wis. 637, 219 N. W. 366, we had presented a situation where a Chevrolet coupe collided with the rear end of a truck standing on a public highway. The body of the truck was seven to eight feet high, with a six-foot box covered with brown canvas and with a dark curtain hanging down the back and its surface quite muddy. The driver of the Chevrolet testified that he did not see the truck until he was within five or six feet of it, and gave as a reason for not having seen it before that the color of the truck was practically the same as that of the atmosphere. The question of whether the driver of the Chevrolet was guilty of contributory negligence as a matter of law received the serious consideration of this court. We assumed that which is established by expert evidence in this case, that objects of a dark color are not easily seen at night by the aid of the most efficient headlights. We were quite reluctant to apply to that situation the rule of *Lauson v. Fond du Lac* because we appreciated that, as a practical proposition, it probably was true that the most efficient headlights would have failed to reveal the presence of the truck until the Chevrolet was very near it. However, the statute then in existence concerning headlights positively required them to be "such as to enable the driver to clearly distinguish a person, vehicle or other substantial object two hundred feet ahead." This was regarded as a legislative recognition of the rule declared in *Lauson v. Fond du Lac,* and left no room to modify the requirement by reason of atmospheric conditions or the relative visibility of objects which might be encountered upon the highway. After a review of all the judicial expressions upon, and statutory regulations of, the subject, we there deliberately concluded that there was no practical modification of the rule laid down

in *Lauson v. Fond du Lac* which could be invented that was in harmony with the then statutory regulations upon the subject of headlights. We applied the rule in *Lauson v. Fond du Lac* and held the plaintiff guilty of contributory negligence as a matter of law.

The same question was presented very shortly after in *Knapp v. Somerville*, 196 Wis. 54, 219 N. W. 369. Our decision in *Kleist v. Cohodas*, 195 Wis. 637, 219 N. W. 366, was there most vigorously challenged, but the argument in that case failed to suggest a restatement of the rule laid down in *Lauson v. Fond du Lac* that would be in harmony with legislative declarations upon the subject. At no time had the legislature referred to the element of atmospheric conditions except in sec. 85.13 (3b), Stats. 1927, which required motor vehicles "of a width in excess of eighty inches (to) carry two clearance lamps on the left side, one in front and one at the rear, displaying a light visible 'under normal atmospheric conditions' for a distance of five hundred feet." However, the law relating to headlights has since been changed. Sec. 85.06, Stats. 1929, in effect at the time of the accident under consideration, provided: "No motor vehicle shall be operated upon or occupy any public highway unless such vehicle is provided with sufficient lights, of such design and so adjusted and operated as to render the use of the highway by such vehicles reasonably safe for all the public." In obedience to that duty, the Industrial Commission has issued its orders 2150 to 2160, both inclusive, prescribing specifications for automobile headlights. These orders contain specific rather than general requirements, and introduce into our headlight law an entirely new scheme. They are to have certain candle power at specified distances and to be focused and adjusted according to definite regulations. If the driver of an automobile has lights which comply with the standards and specifications prescribed by the Industrial Commission, he is violating no

law, no matter what their efficiency in varying atmospheric conditions, or whether they will enable the driver to see a given object at any specified distance.

There was no evidence in this case that the headlights of the Buick car failed to comply with the standards and specifications prescribed by the Industrial Commission. This has a bearing upon the question of whether either Ley or Blum can be held guilty of a want of ordinary care as a matter of law in failing to keep a proper lookout. The evidence shows that both of them maintained a diligent lookout. It is true that notwithstanding their maintenance of a diligent lookout, they failed to see the truck in time to avoid a collision with it. This failure was due, however, as appears by the expert evidence in the case, to atmospheric conditions and the poor visibility of objects bearing the color in which the truck was painted. While under the former law it was the absolute duty of Ley to drive at a rate of speed at which he could stop within the distance he could see the truck ahead, no matter what its visibility or the atmospheric conditions of the night, such is no longer the law. He is now obliged to have lights which conform to the orders of the Industrial Commission, and he is bound to drive at such a rate of speed with such lights as to make use of the highways safe for others. Whether he responds to these requirements must in the nature of things be a jury question, except perhaps in most extreme cases.

From these considerations it follows that neither Ley nor Blum, under the circumstances here under consideration, can be held guilty of a lack of ordinary care as a matter of law in failing to keep a proper lookout. We are not required to consider whether the acquiescence by Blum in the speed at which Ley drove the car constitutes contributory negligence which should bar him from recovery against the defendants, under the rule stated in *Cameron v. Union Automobile Ins. Co.* (210 Wis. 659), 246 N. W. 420, at

p. 423, and corrected in *Wiese v. Polzer* (212 Wis. 337), 248 N. W. 113, at p. 116, second column, to the effect "That the deceased by riding with Funfar assumed the risk of injury sustained through his customary method of driving on the trip is doubtless true, but he did not by so riding assume the risk of injury caused by the negligence of users of the highway other than Funfar, unless the acts of Funfar in which the guest acquiesced operated as a cause of the collision, and they did not so operate in the instant case," for the reason that such ground of contributory negligence was not submitted to the jury and is not urged here. For future guidance, we may remark that the principle above stated perhaps finds a more scientific and definite expression in sec. 31, page 58, of Tentative Draft No. 10 of Restatement of the Law of Torts by the American Law Institute, which is as follows:

"*Failure to control negligent third person.* A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff (a) has the ability to control the conduct of a third person, and (b) knows or has reason to know that he has such ability, and (c) knows or should know (i) that it is necessary to exercise his control, and (ii) that he has an opportunity to do so, and (d) fails to utilize such opportunity with reasonable care."

This statement is here set forth in the belief that it furnishes the underlying principles upon which it must be determined whether the conduct of a guest is such as to prohibit his recovery from the driver of another car which collides with the car in which he is riding. As already stated, however, it has no bearing upon the issues raised in this case.

The judgment in favor of Ley must be reversed, with directions to render judgment dismissing his complaint. The judgments in favor of the plaintiffs Blum and the Colby Cheese Box Company must be affirmed.

*By the Court.*—So ordered.