MANN, Respondent, vs. RELIABLE TRANSIT COMPANY and another, Appellants.

*February 6—March 5, 1935.*

For the appellants there was a brief by *Bender, Trump & McIntyre* of Milwaukee, and oral argument by *Eugene McIntyre*.

For the respondent there was a brief by *Pellette & Zillmer*, and oral argument by *John M. Redford*, all of Milwaukee.

NELSON, J.  Both defendants assert that the court erred in refusing to grant their motions for a nonsuit, in refusing to grant their motions for a directed verdict, in refusing to grant their motions after verdict, and in awarding judgment against them.  The errors assigned by both defendants are based upon the contention that the plaintiff was guilty of negligence as a matter of law in respect to lookout and speed. Additional error is assigned by the defendant, Reliable

Transit Company, based on the contention that Skurdanis was not its agent but was an independent contractor. The contentions require consideration of the facts.

On April 21, 1931, some time between 1 and 1:30 o'clock a. m., the plaintiff was driving his automobile north on United States Highway No. 41. The night was dark and it was raining hard. The lights of plaintiff's automobile were in first-class condition. At a point about a mile north of the village of Truesdale, where the highway was straight and level, the plaintiff ran into the rear of a truck belonging to the defendant, Skurdanis, which was stalled upon the highway. As a result of the collision the plaintiff's automobile was badly damaged and the plaintiff was injured. At the time of the accident a truck belonging to the Sprout Cartage Company was stopped on the left side of the highway, headed south, almost opposite the other truck. There was evidence to the effect that the lights of the Sprout truck were turned on full force. The plaintiff testified that prior to the accident he was maintaining a speed of about thirty-five miles per hour, but slowed down to twenty or twenty-five miles as he approached the Sprout truck; that he thought that the Sprout truck was moving toward him; that it was so dark that he could not see objects in the distance which would have assisted him in observing whether the Sprout truck was moving or stopped; that as he approached the Sprout truck his vision was interfered with by its bright lights and the resultant glare on the wet pavement; that he could see nothing beyond the blind space that existed at the point of passing; that he did not observe the Skurdanis truck until he was within ten or fifteen feet from it and was then unable to stop before hitting it.

The question for decision is whether the facts adduced gave rise to a jury question as to the plaintiff's negligence. It is our opinion that they did. It was a dark night; it was raining hard; the plaintiff thought that the Sprout truck was

moving toward him, and he did not discover that it was standing still until shortly before he was about to pass it. Had he observed that the Sprout truck was standing still, a different question would be presented. Until he reached a point about one hundred feet ahead of the lights he had been able to see ahead a distance of about a hundred and fifty feet. When he got to within a hundred feet of the Sprout truck, his vision was interfered with, and he could not see beyond the blind space which existed as a result of the bright lights. Believing that the truck was approaching him, and that he had had a preview of that part of the highway where he was about to pass the truck, he had no reason for anticipating that his side of the highway was obstructed at that place. In our view, the question as to his negligence hinges upon whether it should be said, as a matter of law, under the circumstances shown, that he failed to exercise ordinary care in not observing that the Sprout truck was standing still. Had he, in the exercise of ordinary care, observed that it was standing still, it would have been his duty to slow down to a speed less than twenty to twenty-five miles before proceeding into the blind space beyond which he could not see, and which he would have had no opportunity to preview. When the situation on a highway is such that one's vision is completely obscured, it is one's duty to slow down or even stop until the cause of such obscured vision is at least in part removed. *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Leonard v. Bottomley,* 210 Wis. 411, 245 N. W. 849; *Pietsch v. McCarthy,* 159 Wis. 251, 150 N. W. 482. Whether one's vision is completely obscured by blinding lights, dust, or dense smoke seems quite immaterial. Had it not been raining hard at the time of the accident, we should be inclined to hold that the plaintiff was negligent, as a matter of law, in not discovering that the Sprout truck was standing still. It is our opinion, however, under the circumstances shown, that it was for the jury to say whether the plaintiff was or was not negligent in

respect to the lookout maintained by him. *Delfosse v. New Franken Oil Co.* 201 Wis. 401, 230 N. W. 31.

As to whether the plaintiff's speed was negligent under the circumstances, we are of the opinion that that also was a question for the jury. The jury had a right to believe that for some time prior to the accident the plaintiff had been proceeding at about thirty-five miles per hour; that he slowed down to twenty or twenty-five miles per hour when he was about to pass the truck; that he had no reason for anticipating that a stalled truck or other object was on his side of the highway at the place of passing, since he believed that the Sprout truck was moving, and that the place of passing had theretofore been within the range of his vision. Assuming, as we have already held, that the plaintiff was not negligent, as a matter of law, in not observing that the Sprout truck was standing still, we cannot say that the plaintiff's speed at the time he entered the blind space was negligent as a matter of law.

The plaintiff contends that this case is ruled in his favor by *Colby Cheese Box Co. v. Dallendorfer,* 213 Wis. 331, 251 N. W. 447. The defendant contends that were it not for that case this action would be ruled as to speed by the doctrine of *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629, and the later cases which followed it. *Kleist v. Cohodas,* 195 Wis. 637, 219 N. W. 366; *Knapp v. Somerville,* 196 Wis. 54, 219 N. W. 369; *Forster v. Outagamie Equity Co-op. Exchange,* 197 Wis. 63, 221 N. W. 376. There appears to be some misunderstanding as to just what was held in the *Colby Cheese Box Co. Case.* In that case the jury found that the plaintiff, Ley, was negligent in respect to speed, and that such negligence was a proximate cause of the accident. Those findings were sustained on appeal. The jury further found that neither he nor his companion, Blum, was negligent as to lookout. That finding was sustained on appeal, although the defendants earnestly contended that both the plaintiff, Ley,

and his guest were negligent as a matter of law in that respect. This contention was made despite the fact that both of them at the time of the accident were intently watching the highway ahead. In the *Cohodas Case* a situation was presented where, due to the color of the truck, the brown canvas covering, and the dirty rear curtain, it was difficult, if not impossible, to see the truck until the plaintiff was almost upon it. However, the law of the *Lawson Case* was applied. In the *Colby Cheese Box Co. Case*, in discussing whether the plaintiff was guilty of negligence as a matter of law as to lookout, it was recognized that there may be a situation where certain objects upon a highway and clearly within the ordinary range of one's lights may not be visible immediately to one, even though he is maintaining a proper lookout and his lights fully comply with legal standards. The phenomenon of camouflage saved the plaintiffs in that case from being adjudged negligent as a matter of law with respect to lookout. The printed case reveals that considerable expert scientific testimony relating to the phenomenon of camouflage was adduced at that trial. Had the rule of the *Cohodas Case* been applied strictly to the facts of that case, the plaintiffs would have been required, as a matter of law, to see what was upon the highway within the range of their lights regardless of its color or visibility. In the absence of a situation in which the phenomenon of camouflage may properly be applied, the rule of the *Lawson Case* as to speed is still the law of this state. A person, in the exercise of ordinary care, should operate his automobile in the night-time at such a rate of speed as will permit him to stop within the range of his lights, and he should be held to that duty in all situations except where an object may not reasonably be distinguished, though within the range of his lights, because of its invisibility to a person in the exercise of ordinary care as to lookout.

Whether Skurdanis, at the time of the accident, was the agent of the defendant, Reliable Transit Company, or an in-

dependent contractor was, in our opinion, a question of fact. That issue was not specifically raised by the answer of the Transit Company.

The question was apparently first raised by the Transit Company when it moved for a nonsuit. It was apparently next raised when it moved for a directed verdict. When the special verdict was framed no question relating to the status of Skurdanis was requested. Since the court entered judgment against the Transit Company, it must have concluded from the evidence adduced that Skurdanis was the agent of Reliable Transit Company. Sec. 270.28, Stats. So the only question is whether such a finding is sustained by the evidence. It appears that Skurdanis had been hauling freight between Chicago and Milwaukee for the Transit Company for almost a year; that his job was a continuing one; that he himself owned the truck but the name of the Transit Company appeared upon it; that the company billed all of the shippers for the full amount of the charges, collected them, and then paid sixty-seven per cent of them to Skurdanis; that the Transit Company paid for the liability insurance carried on the truck; that it also paid the ton-mile tax to the state of Wisconsin; and that the company, not Skurdanis, was licensed as a common carrier by the state of Wisconsin to do only interstate trucking in Wisconsin. Skurdanis paid for the gas and oil used for the up-keep of the car and storage charges at destination. He was not permitted to haul freight for others. An officer of the company testified that it had complete control as to what Skurdanis hauled, where he hauled it, and when he hauled it. The contract between Skurdanis and the company was oral. As Skurdanis did not appear at the trial and as no officer of the company, having knowledge of the terms of the contract, appeared at the trial, its exact terms were not shown. Under all of the circumstances, we think it clear that the court was justified in concluding that Skurdanis, while engaged in hauling freight for the company, was its agent rather than an independent

contractor. *Komula v. General Accident, F. & L. A. Corp.* 165 Wis. 520, 162 N. W. 919; *Sempier v. Goemann,* 165 Wis. 103, 161 N. W. 354; *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117; *James v. Tobin-Sutton Co.* 182 Wis. 36, 195 N. W. 848; *Kruse v. Weigand,* 204 Wis. 195, 235 N. W. 426.

We do not find it necessary to decide whether a licensed carrier can delegate its right to carry interstate freight to an independent contractor.

*By the Court.*—Judgment affirmed.