BUTTS, Respondent, vs. WARD and others, Appellants.
ROHLOFF, Executrix, Respondent, vs. SAME, Appellants.

*March 14—April 12, 1938.*

388

O. A. *Oestreich* of Janesville, guardian *ad litem,* for the appellant John Ward.

For the appellants Kroger Grocery & Baking Company and George Bunders there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *R. J. Sutherland* and *Ralph E. Axley,* all of Madison.

For the respondents there was a brief by *Moran & O'Brien* of Delavan, and oral argument by *J. Arthur Moran* and *John N. O'Brien.*

FOWLER, J. The defendants Kroger Grocery & Baking Company and Bunders assign as error the refusal of the court to direct a verdict and award judgment in their favor on the grounds that, (1) Ward was negligent as matter of

law; and (2) that his negligence was a superseding or intervening cause that rendered Bunders' leaving the truck on the highway not a proximate cause of the injuries sustained by the parties; and that if not entitled to a directed verdict they are entitled to a new trial because the court, (3) refused to submit to the jury questions requested by them; (4) they were denied a fair trial on the question of Ward's lookout; (5) the damages awarded were excessive; and (6) the court erred in instructing the jury as to damages. The defendant Ward assigns as error that the court refused to direct judgment in his favor as against the plaintiffs, in awarding contribution against him in favor of the other defendants, and in not awarding him judgment against his codefendants for the full amount of his damages for injury to his automobile, on the ground that, (7) he, as matter of law, was not guilty of any negligence, and the collision was wholly due to the negligence of the defendant Bunders.

(1) and (7) involve the controversy as to the negligence of Ward and the other defendants. The findings of the jury as to Bunders' negligence as stated in the preceding statement of facts are all amply sustained by the evidence.

The evidentiary facts appearing without dispute or properly inferred that bear upon Ward's negligence in addition to those stated preceding the opinion may be summarized as follows: The collision occurred shortly after the time after sunset when sec. 85.06 (1), Stats., prohibits operations of automobiles on the highway without lights, and when sec. 85.06 (2) (d) requires flares or fusees to be placed when trucks are left standing on the road. The lights were turned on on both automobiles but not on the truck. The highway was paved; the pavement was twenty feet wide; the shoulders were hard and dry. The west shoulder was ten and the east twelve feet wide. There was a shallow ditch outside the shoulders. Butts turned onto Highway No. 89 at the inter-

section of it with another road fifteen hundred feet north of the place of collision and noticed the standing truck when he entered No. 89. The road was straight, and there were no depressions or elevations to interfere with vision north at any point within a distance of nineteen hundred feet south of the standing truck. Ward did not notice the truck until he was about two hundred feet from it, nor did his seat mate. Both Ward and his seat mate claimed to be watching the road ahead closely. Ward was driving about forty-five miles per hour on his own side of the road. His lights were good and would disclose objects two hundred feet ahead. His brakes were good and at forty-five miles per hour his car could be stopped in one hundred thirty-five feet. As soon as Ward noticed the truck he applied his brakes. He did not turn left sooner because, he says, he thought a vehicle might be coming from the north. He kept to the right until it appeared that he would collide with the truck unless he turned, and he then turned left instead of right, although there was room to pass the truck on the right by turning onto the shoulder. Looking north from points south of the place where the truck stood, the background formed by trees and farm buildings was dark. The color of the truck was similar to that of the background. Experienced drivers testified that it is difficult to discern objects against a dark background that are of color similar to that of the background. Dark objects against a dark background are hard to distinguish, while they show up plainly against a light background. The difficulty of discerning objects in the roadway of dark color in the nighttime, even with most efficient headlights, was recognized by this court in *Colby Cheese Box Co. v. Dallendorfer,* 213 Wis. 331, 251 N. W. 447. It is there pointed out that the rule laid down in *Lawson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629; *Kleist v. Cohodas,* 195 Wis. 637, 219 N. W. 366, and *Knapp v. Somerville,* 196 Wis. 54, 59, 219 N. W. 369, is too strict for

practical application under all circumstances. The statute in existence when the two cases last above cited were decided were considered in the *Dallendorfer Case* as legislative indorsement of the rule of the *Lauson Case,* that an automobile should always be driven at such speed that it can be stopped within the range of its lights. Those statutes lay down the positive requirement of carrying lights sufficient to enable the driver to distinguish obstacles two hundred feet ahead under any and all conditions. The statutes when the *Dallendorfer Case* was decided, and now in existence, sec. 85.06, subs. (1) and (2) (a), introduce the element of "normal atmospheric conditions." The rule of the *Lauson Case* was limited in *Mann v. Reliable Transit Co.* 217 Wis. 465, 470, 259 N. W. 415, to situations where "the phenomenon of camouflage" does not exist, and in applying it situations are excluded in which "an object may not reasonably be distinguished, though within the range of his [the driver's] lights, because of its invisibility to a person in the exercise of ordinary care as to lookout." Owing to background and the dark color of the truck in the instant situation, we have a situation of "camouflage," as the word is used in the *Mann Case* opinion. Upon all the evidence we are of opinion that the jury might properly find Ward not negligent as to lookout for not perceiving the truck sooner than he did.

The jury also found Ward not guilty "with respect to making observation before turning to pass the truck as to whether the left or west lane was free of oncoming traffic for a sufficient distance ahead to permit such passing of the truck to be made in safety." This was equivalent to finding he was not negligent for turning left. If not negligent as to lookout, Ward was in an emergency not of his own creation, and his exercise of judgment in turning left might properly be held excusable by the jury, although it may appear in retrospect that it would have been less unsafe to turn right. With these two findings justified, Ward is freed from negli-

gence in any respect. The jury found that he was negligent for "not turning out sooner." But there was no occasion to turn out or do anything at all until he saw the truck. He turned in time to clear the truck, and turned as soon as he perceived he would run into the truck if he did not turn. He was in an emergency. He would traverse two hundred feet in approximately three seconds at forty-five miles per hour. It would take him at least a split second to remove his foot from the accelerator and press the brake, another for the brake to act on the wheels and for the wheels to act on the road. It appears to us that he acted as promptly as and did all that could reasonably be expected under the findings that he was not negligent as to lookout or in turning left. The jury's inference of negligence in the respect found was not warranted. It follows that the complaint should have been dismissed as against Ward, the cross complaint against him for contribution should have been dismissed, and judgment should have been entered upon his cross complaint against his codefendants for the full amount of the damages to his car, unless the other defendants are entitled to a new trial upon the grounds laid therefor.

(2), (3), (4) Under (3) Ward's codefendants claim that the court erred in not submitting the question as to Ward's negligence in form as requested by them instead of as the court framed it. The court put the question: "At or immediately prior to the collision did the defendant, John Ward, fail to exercise" ordinary care with respect: (a) To lookout; (b) turning out sooner; (c) turning out suddenly; (d) making observation before turning left. The requested question was, "Did the defendant, John Ward, fail to exercise ordinary care *after he became aware of the truck*" in respect to (b), (c), and (d) of the court's question and "in respect to stopping." The court omitted from the question submitted "in respect to stopping" and included "in respect

to lookout." The argument is (A) that including the phrase "after he became aware" of the truck's presence was necessary on the theory that Ward's negligence was a superseding cause, and (B) was also necessary properly to present the question of Ward's lookout and to afford his codefendants a fair trial.

As to (B) we do not perceive that the court's omission of the phrase "after he became aware of the truck" from its question covering the negligence of Ward at all affected counsel's presentation of his contentions as to the insufficiency of his lookout or was in any respect unfair. It was in fact favorable to Ward's codefendants, as it covered lookout both before and after Ward noticed the truck while the questions requested would have only covered it thereafter.

As to (A) there was no error in not so submitting the case as to procure findings appropriate to counsel's contention that Ward's negligence was a superseding or intervening cause, not only because Ward was not negligent, but because the theory was erroneous. Had Ward been negligent his negligence would not have relieved his codefendants. The point has been so settled by this court by several recent decisions. In discussing the point we will begin with the case of *Felix v. Soderberg,* 207 Wis. 76, 240 N. W. 836. In that case Soderberg had been negligent in colliding with the car of plaintiff, and his car had been negligently left standing in the middle of the street where it came to rest after the collision. The plaintiff had moved his own car from the place of collision and parked it on the side of the street and was standing near it, when a third person negligently ran into Soderberg's car and pushed it along so that it ran against plaintiff and injured him. It was contended there, as here, that the negligence of the third person was a superseding cause that rendered Soderberg's negligence not a proximate cause of the plaintiff's injuries. The court,

with due consideration of the rules given in the Restatement of the Law of Torts, and here relied on, secs. 440, 441, and 442, held that the negligence of the third person and Soderberg was each a proximate and concurring cause of the plaintiff's injuries. Our position in that case was taken advisedly, and we see no reason to depart from it. The rule of that case has been reiterated and adhered to in *Balzer v. Caldwell,* 220 Wis. 270, 278, 263 N. W. 705; *Kassela v. Hoseth,* 217 Wis. 115, 121, 258 N. W. 340; and *Meyer v. Neidhoefer & Co.* 213 Wis. 389, 392, 251 N. W. 237. Although the *Soderberg Case* is not cited, the rule there declared was inferentially applied in *Knauf v. Diamond Cartage Co.* 226 Wis. 111, 275 N. W. 903. The concurring acts of negligence involved in the *Knauf Case* were acts of the plaintiff who was driving a trailing car and of a defendant truck driver who negligently left his truck on the roadway, but if negligence of Ward would have been a superseding as distinguished from a concurring cause in the instant case, so would the negligence of the plaintiff in the *Knauf Case. Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721, also applied the rule of the *Soderberg Case,* although the latter case was not cited, and the claim of superseding cause was not raised. There, as here, an automobile going in the direction that a truck standing on the road was headed collided with the truck. The driver of the truck was negligent in leaving his truck on the road, and the driver of the automobile was negligent in running into it. The latter's negligence occurred after the former's, but each was considered a proximate and concurring cause. In every case where a vehicle is negligently left standing in the road, and a vehicle moving in the direction the standing vehicle is headed negligently collides with it, the negligence of the driver of the trailing vehicle occurs after that of the driver of the standing one, and the latter's negligence is never a

proximate cause upon the theory of supervening cause here advanced. The point was also involved in *Kiviniemi v. American Mut. L. Ins. Co.* 201 Wis. 619, 625, 231 N. W. 252. Sutherland on Damages, Thompson on Negligence, and *Kellogg v. Chicago & N. W. R. Co.* 26 Wis. 223, and *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469, 475, 24 L. Ed. 256, are there cited and quoted with approval. The *Kellogg Case* holds that unless the antecedent negligence is "disconnected" from the later negligence, or is not "set in motion" by it, it is proximate.

"The inquiry should be as to whether the original wrongful act was the antecedent efficient and dominant cause which put the other causes in operation."

Such is the case here. See also *Pisarke v. Wisconsin T. & C. Co.* 174 Wis. 377, 183 N. W. 164.

A statement in *Swinkels v. Wisconsin Michigan Power Co.* 221 Wis. 280, 287, 267 N. W. 1, is that—

"Whatever negligence may be predicated upon the .fact that the bus was being operated [with its left wheels slightly] to the left of the black [center] line was static, a condition rather than a cause. [Citing cases.] The position of the bus on the highway could cause no injury to the plaintiff in absence of his entering into the dangerous zone alongside of it. It is our opinion that the position of the bus on the highway did not cause the plaintiff's injuries."

The point of the statement quoted is, not that the negligence of the driver of the automobile was a supervening or intervening cause that rendered the negligence of the bus driver not proximate, but that the bus driver's negligence was not a cause at all. Moreover, in the instant case, although the position of the truck in the road, like that of the bus, was "static," the negligence of its driver in not having its tail and clearance lights burning and not setting out burning flares or fusees was not "static." His negligence in

those respects, at least, was effectively operating and was active.

That negligence of the bus driver in encroaching on the left side of the road was considered not to have any causal connection with injuries involved in the *Swinkels Case* clearly appears from the opinion. The facts were that the driver of a trailing car had turned out to pass the bus. That the bus was invading his side of the road did not move him to endeavor to pass. There was no connection between the position of the bus and the negligence of the driver of the car that caused the accident. There was ample room for the car to pass at the left of the bus, and no traffic ahead to prevent its passing. Before the driver got past the bus he neared a row of posts set on the edge of the shoulder of the road and ran into them and this caused the injury. There was ample room to pass between the posts and the bus when the car struck the posts. There was no collision with the bus. Had the bus been wholly on its own side of the road, steering the car into the posts instead of to the right of them would have caused the injury just the same. The statement in the quotation from the *Swinkels Case* that "the position of the bus on the highway could cause no injury to the plaintiff in absence of his entering into the dangerous zone alongside of it" is true, but it by no means follows from it that the position of a vehicle in the road cannot operate as a proximate cause in any situation or in the situation here involved. The view of the court and the view it intended to express was that the position of the bus did not operate as a cause in the situation there involved because its position was "disconnected from" and did not "set in motion" the negligent driving of the automobile.

The cases cited in the quotation from the *Swinkels Case, supra,* are all relied on by counsel for Bunders and Kroger Company in support of their theory that negligence of Ward

was a supervening cause and they are here briefly stated. In *Hendley v. Chicago & N. W. R. Co.* 198 Wis. 569, 225 N. W. 205, a train stood across a street five minutes longer than a statute allowed and an automobile ran into it. The case is to the point that the overstay of the train, like the encroachment of the bus, was not a cause at all. As the opinion points out, had the automobile arrived seven minutes earlier, the accident would have happened just the same. The court states (p. 571) that—

"The lapse of time therefore went no further than to create the [a mere] condition in which the accident occurred as distinguished from the cause thereof."

It did not move the driver of the automobile to run into the train. His negligence in running into it was wholly disconnected from the negligent overstay.

*Lippert v. Joseph Schlitz B. Co.* 141 Wis. 453, 124 N. W. 491, involved the explosion of a bottle which caused a workman holding it to throw it and a broken piece fell through a hole in the floor, and struck another workman on the floor below and injured him. It was claimed the hole in the floor constituted a violation of the safe-place statute. · In the opinion the court said (p. 456):

"This hole did not cause the broken glass to come down. It was a mere condition which made the negligent dropping or throwing of the glass effective to produce the injury. The case might be different if this hole could cause something to fall on the plaintiff without the intervention of a responsible negligent human agency. The case seems to present the question of the liability of a master to third persons on account of the wrongful or negligent act of his servant."

*Zolesky v. Briggs Loading Co.* 172 Wis. 6, 177 N. W. 871, involved the explosion of a hand grenade which had been fired by government inspectors into a pit in testing grenades manufactured by the defendant. It was the duty of

the inspectors to collect all unexploded grenades. It was claimed that the injury involved was caused by the construction of the pit. The court could not perceive how erecting the pit could be the cause of the injury, which was held to have "resulted not from the character of the bomb-proof [pit], but from negligence of the inspectors." (p. 9.)

In *Wilczynski v. Milwaukee E. R. & L. Co.* 171 Wis. 508, 514, 177 N. W. 876, the defendant was employed to install an electrical motor and apparatus used to operate machinery to control a clamshell in handling fuel. The defendant negligently failed to ground the frame on which the motor was placed. A workman received a shock while an employee of defendant was present installing some parts that the defendant had repaired. The defendant's employee inferred, as the fact was, that the shock was due to static electricity, and attempted to remedy this by connecting the motor frame to other machinery. After he had left another workman received a shock while operating the clamshell. Thereupon without informing the defendant, the men operating the clamshell, who knew nothing of electrical apparatus, undertook to ascertain the trouble, and noticed that the motor frame was not grounded. They had observed that a ground wire that had originally run from the frame to the ground was absent. They procured a short piece of small wire and with it connected the frame to an iron rod and shoved the rod two feet into the ground. The wire was too small to operate efficiently as a ground wire, and in afterward operating the clamshell a workman was killed by the electric current from the motor passing through him to the ground due to the insufficiency of the ground wire. On the authority of *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 155, 103 N. W. 271, stating that—

"Whenever a new cause [independent intervening circumstance] intervenes which is not a consequence of the first

wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action,"

the court held that the negligence of the defendant's employees in not grounding the frame was too remote to be considered a cause; that the defendant company could not reasonably anticipate that workmen of the defendant, who knew nothing about electricity or electrical apparatus, would attempt to make repairs to protect them against an electric current they knew to be highly dangerous. The negligent act of the workmen was considered "the immediate and proximate cause of his [the workman's] death, rather than the negligence of the defendant, which by the intervening act" of the workmen "had become remote and not a proximate cause."

The other case is *Rusczck v. Chicago & N. W. R. Co.* 191 Wis. 130, 135, 210 N. W. 361. The plaintiff's intestate was a guest in an automobile. The automobile was crossing a series of thirteen railway tracks. A flagman was maintained on each side of the tracks. It was the duty of the flagman on the east side to flag for trains on the two main tracks at the east on which all through trains ran, and of the other to flag for the rest of the tracks which were all switching tracks. The automobile approached from the west, and the driver stopped because a string of cars stood on the westerly track. The west flagman stood on the east side of the train and looking between cars saw the automobile. When the string of cars moved on, the driver of the automobile started across and the automobile was struck by a through freight train running on the easterly through track and the intestate was killed. The jury found the west flag-

man was negligent for not signaling the driver of the automobile to stop and for failing to warn him before he started across the track. The court expressed the view that if the west flagman was negligent as found by the jury, his negligence was not a proximate cause of the death of the deceased, because the driver of the automobile knew the situation and during his progress of two hundred feet could and should have seen the headlights of the oncoming freight train in time to have stopped before reaching the track, and his negligence in failing to do so "was a negligence intervening between any *possible* negligence by the flagman" and the result, and was thus the proximate and the only proximate cause of the death. However, it was not the duty of the west flagman to warn for trains on the two east tracks. As there was no train moving on any of the switch tracks, there was no occasion for him to give warning, and therefore no negligence on his part as matter of law. The decision of the court might well have been based upon this fact, and why it was not we do not now perceive. Whether the reasoning of the opinion would now be applied to the same situation is not for decision now. However this may be, it cannot be applied to the instant case in view of our decisions in the *Soderberg Case, supra,* and the other cases first above referred to. The cases last stated may afford comfort if not aid to counsel in his attempt to shield his clients from the results of their negligence by having Ward's conduct treated as supervening negligence rendering their negligence remote as distinguished from proximate, but to give to those cases or to general statements contained in their opinions the effect contended for would be to render nugatory, in most if not all situations, the statutory provision against leaving vehicles in the traveled lane of roads without the designated safeguards, and to disregard the implied statutory declaration that injury to others is reasonably to be anticipated from so leaving them.

The case of *Kline v. Moyer,* 325 Pa. 357, 191 Atl. 43, is relied on in support of the theory contended for. The facts in that case are practically the same as in the instant case. The opinion does not state that any safety statute was violated in connection with the standing truck there involved, but such was doubtless the case. Assuming that the ruling in that case supports the contention here made, we cannot follow it. Doing so would permit one driver to violate any statutory regulation without civil responsibility for collisions with another vehicle resulting from his violation whenever the situation was such that the driver of the latter vehicle could by the exercise of ordinary care avoid the collision. This would be contrary to our former holdings as above pointed out. It would disregard the idea of reasonable anticipation involved in proximate causation that is implied from the enactment of statutory safety regulations. Whenever the legislature enacts a safety statute it declares that injury from violation of it is reasonably to be anticipated. The legislature establishes the standard of care to be exercised and liability for injury resulting from violation of the standard follows. *Osborne v. Montgomery,* 203 Wis. 223, 240, 241, 234 N. W. 372. The like may be said of the general rule relied on in support of the theory here advanced that one may presume that others will exercise ordinary care. But this rule does not go so far as to relieve one from responsibility for injuries resulting from his violation of safety statutes whenever such injuries, whether to third person or to plaintiffs under our comparative-negligence statute, may be prevented by the exercise of ordinary care on the part of others. In determining whether a person has exercised ordinary care under the common law, the presumption stated obtains. But when the degree of care required has been established by statute there is no room for indulgence of the presumption. The statute has itself established the standard of ordinary care required.

It should further be said that the attempt to establish the theory of the law here advanced as the law of this state is in effect an attempt to establish the "last clear chance" doctrine which was long ago repudiated by this court. For a discussion of this subject and citation of the cases in this court treating it, see *Switzer v. Detroit Investment Co.* 188 Wis. 330, 333 *et seq.*, 206 N. W. 407. We decline to retract our position upon this proposition.

(5), (6) For pain and suffering the jury awarded Butts $5,000. He was confined in bed at a hospital one week, in bed at home seven weeks, in a wheel chair two weeks. After that he was able to get around. The jury might infer from the evidence that at the time of the trial, nine months after the accident, he was still suffering great pain in his hip, arm, and right side, and unable to walk or ride in an automobile or sit in a chair without so suffering; that his pain was such that he could not turn over in bed or sleep on his right side; that he does not get much sleep; and that he was highly nervous. His prior health had been good and he was well preserved and active mentally and physically for his age. Since the accident his appearance of age has greatly increased; he has lost ambition, become melancholy and discouraged. Doubtless his condition and suffering are in some part indirectly due to the loss of the services and companionship of his wife, for which $4,500 was allowed and which goes to him. Compensation for pain and suffering is hard to measure, and must rest in the discretion of the jury, guided by common sense. Neither party has taken the pains to cite us to cases in which assessment of damages for pain and suffering only have been passed upon. The one party merely says that the assessment in this respect is excessive, the other that it is not. The allowance here made, in view of the assessment of damages for loss of services and companionship of the wife, seems to us unduly high. We are of

opinion that a jury, properly actuated and upon due consideration, would be likely to assess the damages for pain and suffering in the instant case at not less than $1,500 nor more than $3,000.

Seven thousand dollars was assessed to Butts for permanent injuries and is claimed to be excessive. The jury might properly find him totally disabled for the rest of his life. He was earning $130 a month at the time of the injury. His expectancy at the time of the trial was eight years. He was allowed $1,147.50 for loss of wages to the time of the trial in addition to the $7,000. The worth of an annuity of $1 at his age at the time of the trial was $5.69, sec. 314.06, Stats., and for $7,000 would give him an annuity of $1,229.32 from the time of the trial. His earnings were $1,560 per annum, and assuming they continued up to his death at his rate at the time of his injury, the amount would be $12,480. The annuity the $7,000 would purchase would bring him $9,834. The assessment was liberal but we cannot say it was excessive.

It is contended that the court's instruction permitted, and the jury presumably allowed, compensation for pain up to the time of the trial and again allowed it for the same period in allowing for pain and suffering in the future. We have read the instructions of the court carefully and are unable to perceive anything that either directed, logically permitted, or was likely to induce such duplication.

Our consideration of the claim of excessive damages moves us to direct the trial court to enter an order giving to the plaintiff Butts the option to file in writing within fifteen days from notice of entry of the order an acceptance of judgment for the damages assessed by the jury less $3,500; and giving to the defendants Bunders and Kroger Grocery & Baking Company the option to file in writing, within fifteen days from expiration of plaintiff's option, their consent

to entry of judgment for the plaintiff for the amount assessed by the jury less $2,000 if the plaintiff does not exercise his option; and directing judgment accordingly in case either option is accepted and a new trial of the case against the defendants Bunders and Kroger Grocery & Baking Company on the question of damages only in case neither option is accepted.

*By the Court.*—In the action of Edward M. Butts the judgment so far as against Ward is reversed, with directions to dismiss the complaint as to him with costs; so far as it is in favor of the defendant Ward upon his cross complaint against defendants Bunders and Kroger Grocery & Baking Company, it is modified by inserting therein the full amount of his stipulated damages instead of ninety-five per cent thereof; so far as it awards contribution against the defendant Ward upon the cross complaint of defendants Bunders and Kroger Grocery & Baking Company, it is reversed; so far as it is in favor of plaintiff Edward M. Butts against defendants Bunders and Kroger Grocery & Baking Company; it is reversed and remanded for further proceedings in accordance with the opinion.

In the action of Alyce Jacobs Rohloff, executrix, the judgment so far as it is against defendant Ward is reversed, with directions to dismiss the complaint with costs; so far as it awards contribution against the defendant Ward, it is reversed; and so far as it awards judgment for the plaintiff against the defendants Bunders and Kroger Grocery & Baking Company, it is affirmed.