OTT, Respondent, vs. TSCHANTZ, Appellant.

*October 9—November 4, 1941.*

For the appellant there was a brief by *L. H. Chudacoff*, and oral argument by *Urban P. Van Sustern*, both of Appleton. *Helmuth F. Arps* of Chilton, for the respondent.

MARTIN, J. There is no dispute as to facts. Defendant was the sole witness to the accident. It appears that between 1 and 1:30 o'clock on the morning of July 5, 1940, defendant was operating his Ford V-8 automobile in a northeasterly

direction on State Trunk Highway No. 57, which is paved with a concrete surface twenty feet in width. The surface of the highway is built up four or five feet above the immediate adjacent right of way on both sides of the concrete surface. The right of way between the highway fences is one hundred twenty feet. Defendant was returning home after attending a dance in Brillion. The night was dark and the concrete surface of the highway was dry. It is conceded that plaintiff's horse had broken through a gate in the plaintiff's farmyard, and traveled down a lane, across the town highway, and onto Highway No. 57.

Defendant testified that, considering the weather conditions, the headlights of his car with the lights on full would shine between three hundred and four hundred feet; that he was operating his car on his right side of the highway; that he was traveling between forty and forty-five miles per hour; that just before the collision he met a car, and before passing slackened his speed and dimmed the lights on his car; that the headlights on the approaching car blinded him; that as he passed and turned the headlights of his car on full, he then for the first time saw the plaintiff's horse immediately ahead in his path of travel; that he was then so close he did not have time to apply his brakes or pass to the left of the horse; that it was a black horse.

It will be noted that the court did not set aside the jury's verdict acquitting defendant of negligence as to speed. In its decision on motions after verdict the trial court said:

"His [defendant's] view along the highway immediately before the collision was unobstructed except for a momentary blinding by the lights of an automobile coming from the opposite direction. The momentary blinding is insufficient to excuse him for failure to see what was on the highway because he had a clear view of the highway between the automobiles as he approached and before he reached the point on the highway where the horse stood, and, if it was more

than a momentary blinding he had the duty to bring his automobile to a stop."

In reaching its decision the trial court assumed that the plaintiff's horse came upon the highway at a point somewhere between the two automobiles. The court said:

"The momentary blinding is insufficient to excuse him [defendant] for failure to see *what was on the highway* because he had a clear view of the highway between the automobiles as he approached and before he reached the point on the highway where the horse stood."

We fail to find any evidence that the horse came upon the concrete surface of the highway or the shoulder thereto at any time or place in the area between the two approaching automobiles. The trial court assumed it did. In its decision on motions after verdict the court said:

"The horse was on the highway at the exact spot where the defendant hit it at the moment when the defendant first saw it. The defendant's conduct therefore cannot be excused on the ground that the horse dashed into his automobile because there is no testimony to that effect."

Defendant testified as follows:

"*Q.* When you hit it where was the horse? *A.* The horse came from the side right into the path of my car.
"*Q.* It came from which side? *A.* From the right side.
"*Q.* That is from the east side of the highway? *A.* Yes, sir.
"*Q.* When you first saw the horse where was it with reference to the concrete strip? *A.* Well, when I saw it, it just came from the side and it was in front of my car before I even had a chance to turn out for it.
"*Q.* When you first saw the horse it was already on the concrete? *A.* Yes, sir.
"*Q.* The entire horse was on the concrete? *A.* Well I couldn't exactly say.
"*Q.* Was it running or standing still? *A.* I couldn't tell at the time.

"*Q.* You don't know whether the horse was running or whether it was standing on the highway? *A.* I couldn't say."

Defendant further testified:

"If there was a horse on the highway I could have seen it."

This testimony, of course, is to the point that if the horse had come upon the highway between the two cars as they approached each other, his vision ahead was such that he would have seen it. It is undisputed that the headlights on defendant's car were in good condition.

The jury had a right to infer that the horse came suddenly into the path of defendant's car just as it had passed the approaching car. We must either accept the defendant's testimony with such reasonable inferences as may be drawn from it, else we are left in the field of pure speculation and guess, in which we are not permitted to indulge.

Sec. 85.40 (1), Stats., provides:

"It shall be unlawful for any person to operate any vehicle upon a highway carelessly and heedlessly, in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection or at speeds greater than those specified in this section or in a manner so as to endanger or be likely to endanger the property, life, or limb of any person, or without due regard to the traffic, surface, width of the highway, and any other condition of whatever nature then existing."

Sec. 85.06 (2) (a), Stats., provides:

"Every motor vehicle in use on the public highways except motorcycles shall be equipped with at least two headlights in good working order. Such headlights shall display a white light of sufficient illuminating power under normal atmospheric conditions to reveal any persons, vehicles, or substantial objects two hundred feet ahead of the headlights. Motorcycles shall be equipped with at least one such headlight."

Of course, it is quite probable that the horse was on the roadside within the highway area as the cars approached each other. This court has never held, so far as we can find, that an automobile driver at night is required as a matter of law to keep a lookout over the entire area within the highway boundaries. Sec. 85.06 (2) (a) has never been construed as requiring automobiles to be equipped with such headlights as shall display a white light of sufficient illuminating power under normal atmospheric conditions to reveal any persons, vehicles, or substantial objects two hundred feet ahead of the headlights the entire width of the highway area. If such headlights were required, it is certain that they would add to the present hazards of night driving.

This court has said many times that questions of negligence arising out of automobile accidents are peculiarly for the jury, and that such questions will not be decided as a matter of law except under the clearest circumstances. *Shortle v. Sheill,* 172 Wis. 53, 178 N. W. 304; *Groeschner v. John Gund Brewing Co.* 173 Wis. 366, 368, 181 N. W. 212.

In the latter case a motorcycle officer came into collision with a truck while it was cutting the corner at street intersections of one of the busiest thoroughfares in the city of La Crosse. The accident happened between the hours of 11 and 12 a. m. The motorcycle officer was killed. The jury found the truck driver guilty of causal negligence and acquitted the motorcycle officer of negligence. Judgment was for the plaintiff. On appeal it was contended that deceased was guilty of contributory negligence as a matter of law; that the deceased, if he had looked, could have seen the truck in front of him; and that his failure so to do constituted negligence as a matter of law. At page 368 the court said:

"It is said that the intersection of Third and State streets is one of the busiest thoroughfares in the city of La Crosse. If this is true, manifestly the driver of the motorcycle was required to be sufficiently alert to avoid traffic of a character which he was required to anticipate. The deceased was not

required to anticipate that he would encounter a truck on the wrong side of the street. *At any rate, we are clear that he cannot be held guilty of negligence as a matter of law."*

In the instant case defendant was not required to anticipate that plaintiff's horse would be loose on the highway.

In *Brothers v. Berg*, 214 Wis. 661, 667, 254 N. W. 384, the deceased husband of the plaintiff was a guest in the car of the defendant Baer; which car came into collision with the truck of the defendant Berg, which was standing on the right side of the road (the side on which the Baer car was traveling). The truck was so parked as to leave a clear traveled road space to the left, of the width of nineteen feet or more. It appears that Baer had dimmed his lights as he met a car. After passing it he turned his lights up and saw a small light, apparently a flashlight, but no red light. He testified in part as follows:

"From the time I put my brakes on until I first saw that truck I traveled possibly thirty feet. During that thirty feet I made a turn to the left to miss the truck. At the end of the thirty feet is when I turned. I kept applying the brakes all that time slightly, wondering what the flashlight was. I didn't see any obstruction on the highway at all in that thirty feet or any other light besides that white light. At the end of this thirty feet I saw the back end of the truck about five or six feet from the shoulder of the road. . . . From the truck when I first saw it, I was five or six feet, or ten feet. I then swung to my left and tried to stop and put my brakes on hard."

The jury found that defendant Berg was negligent because of failure to provide and maintain a sufficient taillight or warning signal; that the collision was the natural and probable result of such failure; that Berg as a person of ordinary intelligence and prudence reasonably ought to have foreseen such result from such failure; and found that defendant Baer did not fail to exercise ordinary care with respect to lookout, nor with respect to speed. On motions after verdict the trial court, being of the view that Baer was guilty

of negligence as a matter of law, set aside the finding of the jury with respect to Baer's negligence, and judgment was rendered jointly against Baer and Berg. Both defendants appealed.

On the appeal of the defendant Baer, the court held that whether under the circumstances Baer was guilty of negligence was a question for the jury, and reversed the judgment with directions to enter judgment in favor of Baer upon the verdict. The court said (p. 668) :

"If as the jury found there was no reflective device on the truck, it was enshrouded in darkness and there was nothing about it to attract his attention. Every experienced automobile driver has had the sensation of coming upon a dark object in the night, which was directly in front of him, upon which efficient lights were shining, but which he had failed to see, although looking attentively until he was almost upon it."

It may be said in the instant case that there was a momentary period after defendant met the approaching car and turned his headlights on full, in which, regardless of the efficient condition of his headlights and an attentive lookout, he could not see this black horse until he was so close to it that he could not avoid the collision. For scientific explanation of such phenomena see *Colby Cheese Box Co. v. Dallendorfer,* 213 Wis. 331, 251 N. W. 447. But regardless of whether the rule as to "camouflage" is applicable to the facts in the instant case, the issue of defendant's negligence as to lookout was for the jury, and the court erred in setting aside the jury's finding on that issue and in holding that defendant was negligent as to lookout as a matter of law.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment upon the verdict as returned by the jury in favor of the defendant, dismissing the action.