ZOLESKY, Respondent, vs. BRIGGS LOADING COMPANY, Appellant.

*May 7—June 1, 1920.*

*Explosives: Erection of testing pits for rifle grenades: Negligence: Injury to boy finding unexploded grenade: Liability.*

1. In an action against a rifle-grenade loading company for injuries to a boy when a grenade found in a testing pit by another boy and given to him exploded, the erection of the pit, into which government inspectors shot grenades after inserting detonators, is not the proximate cause of the injury, which resulted not from the character of the testing pit, but from the negligence of the inspectors in failing to collect unexploded grenades.
2. Where the loading company, by its contract with the government, was obligated to allow the latter to take from manufactured grenades a sufficient number for testing purposes, which grenades, when selected, ceased to be under control of the company, any negligence in regard to them by government inspectors was not attributable to the company.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed.*

Personal injury. The plaintiff is the father of one Roland Zolesky, a boy eight years of age. The defendant is a corporation engaged in the manufacture of rifle grenades. The complaint alleges that during the summer and fall of 1918 and down to the 6th day of December, 1918,

the defendant manufactured grenades, and during the process of manufacture had such grenades tested by firing same from a rifle; that some of the grenades so fired did not explode upon striking the mark or target, and were permitted, through the carelessness or negligence of the defendant, to remain upon its premises; that the said grenades are explosive, and of such a nature as to be attractive to young children and an inducement for them to pick them up and carry them away to play with, all of which the defendant knew, or in the exercise of ordinary care should have known; that in the month of December, 1918, some school children while upon the premises carried away grenades which were scattered about the unguarded premises of the defendant, and one of said grenades was given to Roland Zolesky, who exploded the same, injuring his right hand and otherwise injuring himself. This action is brought to recover the value of lost services.

The jury by special verdict found (1) that the defendant was guilty of negligence in erecting and permitting the testing pit on the east side of the river to be used for the purpose of testing grenades containing detonators; (2) that such negligence was the proximate cause of Roland's injuries; (3) (changed by the court from "Yes" to "No") that the defendant did not have knowledge that the unexploded grenade had been left in the firing pit on the east side of the river; (4) that in the exercise of ordinary care the defendant should have known that an unexploded grenade had been left in the firing pit on the east side of the river; (5) that the Moore boy did not know at the time he gave to Roland Zolesky the grenade in question that the detonator was explosive; (6) that Roland Zolesky was not guilty of contributory negligence; and (7) assessed the damages at $2,000.

After verdict there were the usual motions. The plaintiff had judgment for the damages as found by the jury, from which the defendant appeals.

For the appellant there were briefs by *Burr J. Scott,* attorney, and oral argument by *Lawrence A. Olwell,* both of Milwaukee.

*Raymond J. Cannon* of Milwaukee, for the respondent.

ROSENBERRY, J.   The conclusion at which we have arrived does not require us to consider whether or not the doctrine of the *Turntable Cases* is applicable in this case, as claimed by plaintiff.   The undisputed facts are that the defendant was engaged in assembling and filling rifle grenades under a contract with the United States government.   It did not manufacture the grenades, but assembled grenade parts manufactured by different plants, and loaded the grenades with TNT.   These grenades when assembled and loaded were harmless until detonators were put in.   The defendant company did not manufacture or handle detonators.   After the grenades were assembled and loaded they were packed in boxes.   Before shipment government inspectors were sent to the defendant's plant for the purpose of testing the grenades.   Originally the grenades were sent to the government proving grounds located near Aberdeen, Maryland. Because of the necessary delays the defendant, at the request of the government, erected bomb-proofs on opposite sides of the Milwaukee river.   The grenades were fired from the bomb-proof on the west side of the river into the bomb-proof on the east side of the river.   After the erection of this proving ground government agents came to the defendant's plant, opened the boxes containing the grenades, selected therefrom a specified number, which were taken to the proving grounds, detonators were inserted, and the grenades fired across the river into the bomb-proof on the east side.

It was undisputed that it was the duty of the government inspectors and a part of the work of inspection and testing to collect the unexploded grenades, or "duds," as they were called.   The defendant company had nothing to

do with the selection of the grenades for testing purposes, with the insertion of the detonators, or with the firing of the grenades into the bomb-proof on the east side of the river, except that occasionally officers of the company were present, witnessed these tests, and occasionally fired the rifle as a matter of curiosity or experience. There is no proof in the record to sustain the finding of the jury, in answer to the third question, that the defendant company had actual knowledge of the unexploded grenades which were left in the bomb-proof on the east side of the river through the negligence of the government inspectors. The answer to question 3 was properly changed by the trial court from "Yes" to "No."

While the complaint alleged that the grenades were permitted through the carelessness and negligence of the defendant to remain upon its premises, the plaintiff apparently abandoned that position upon the trial, for the only question of negligence submitted to the jury is as to the negligence of the defendant in erecting and permitting the testing pit on the east side of the river to be used for testing purposes. We do not perceive how the erection of this pit can be held to be the proximate cause of the injury. It is true that it was upon land which had been acquired by the city and county of Milwaukee for park purposes, but it was unoccupied, and was as appropriate for the use to which it was put as any site which could be obtained in a settled community. Had the plaintiff's son been injured by a flying grenade, a different question would be presented. Here the injury resulted not from the character of the bomb-proof, but from the negligence of the inspectors in failing to collect the unexploded grenades as they were required to do by their orders.

. It is argued that, because the title to the goods did not pass until the test had been made, the unexploded grenades remained the property of the defendant and it was therefore liable. We regard this argument as unsound. Under

the contract with the government, the government had a right to take from the manufactured grenades a sufficient number for purposes of making a test. To that extent and for that purpose such grenades, so selected, ceased to be the property of the defendant. Certainly from that moment they ceased to be under the control of the defendant, and if thereafter they were negligently left in an exposed position, it was not through the negligence of the defendant but through the negligence of the inspectors. The fact that as a matter of convenience and for purposes of expediting the business of furnishing the grenades the defendant company erected the proving grounds at the request of the government, does not make it responsible for the negligent acts of the government inspectors in connection with the use of the grounds.

*By the Court.*—Judgment reversed.