SWINKELS, Respondent, vs. WISCONSIN MICHIGAN POWER COMPANY, Appellant.

*March 2—April 28, 1936.*

282

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee and *Homer H. Benton* of Appleton, and oral argument by *Mr. James D. Shaw* and *Mr. Benton.*

For the respondent there was a brief by *Bradford, Bradford & Derber* of Appleton, and oral argument by *A. S. Bradford.*

NELSON, J. In our view, the only question that need be determined upon this appeal is :

Does the evidence support the finding that the defendant's driver failed to exercise ordinary care and that such failure caused the plaintiff's injuries?

At the outset we should state the material facts. At about midnight on the evening of June 16, 1934, the plaintiff, a single man, twenty-three years of age, left McCabe's Tavern in the village of Little Chute, intending to drive his automobile to Appleton. Accompanying him were two young ladies — Catherine Lemmens and Frances Blohm — and a young man, John Lemmens. Catherine occupied the front seat with the plaintiff, and Frances and John occupied the back seat. The automobile, just prior to the accident, was being driven in a westerly direction along United States Highway No. 41. That highway was paved with concrete, was eighteen feet wide with the usual shoulders, and had a black line in its center. Upon going over the crest of a hill shortly before the accident, the plaintiff observed the defendant's bus several hundred feet ahead of him, proceeding in the same direction. The plaintiff overtook the bus which, at the time of overtaking, was traveling about a foot and a half over the black line. As the plaintiff came up to the bus, he did not decrease his speed or trail the bus at all but, after giving two short blasts of his horn, proceeded to pass it. The plaintiff estimates that his speed at that time was forty miles per hour. The bus did not give way to the right in response to his signal, but according to the plaintiff's testimony, further invaded the left side of the road so that it was about three feet over the black line when the front of the plaintiff's automobile was about opposite the middle of the bus. Just at that time he sounded his horn twice and almost immediately, without applying his brakes or decreasing his speed, turned his automobile into the ditch.` At no time was there any contact between the plaintiff's automobile and the bus. The shoulder at that point had narrowed down from

about eight feet to two and a half·feet. The narrowing of the shoulder was caused by a long row of guard posts which existed on the south side of the road to protect traffic from the hazards of a deep ditch on the south side of the road. A short distance to the west beyond the first guard post the highway curved to the left. The road at the place of the accident was substantially straight. There was some dispute as to just where the curve began and the upgrade beyond started, but there is no dispute that a curve and an upgrade existed a short distance beyond the first guard post. When the plaintiff turned his automobile toward the ditch, it almost immediately hit the first or most easterly guard post, and as a consequence the plaintiff was seriously injured. The plaintiff himself described the accident as follows:

"As I was going down the hill . . . I noticed a bus ahead of me. The bus was way over the black line. I pulled up behind the bus and sounded my horn but he didn't get over and I got up alongside of him and I sounded the horn again. The bus kept coming over toward me and I sounded my horn and the bus came over and I had to take the ditch. . . . The front wheels of my car reached a point about the middle of the bus. As I was attempting to pass the bus I sounded my horn but the bus kept coming toward me and shoved me off the road. I had to hit the bus or take the ditch. . . . I would say it is about one hundred feet from the time I pulled to the left to pass the bus and the place where the accident occurred. I was driving about forty miles an hour. I didn't trail behind the bus. . . . The bus was not going very slow and must have been going faster than I was. The bus picked up speed as I was alongside of it and crowded me off the road. I had traveled alongside of the bus for about one hundred feet before it picked up speed. It was my impression that either the bus was racing with me or trying to avoid letting me pass him. I would say there was about four or five inches between my car and the bus. There was no contact whatsoever between the bus and my automobile. . . . When the bus picked up speed it came at me on my side of the road. I didn't put on my brakes because I had no time. At no time from the time I started to pass the bus until the accident did

I apply my brakes nor did I in that time change the gear shift lever. My car was equipped with a foot hand brake and I used neither of them. When the bus picked up speed it did not pull away from me but came over to my side of the road and I had to take the ditch. . . . The bus driver did not at any time sound his horn in acknowledgment of my horn. . . . The bus did not at that time get over to the right side of the road in response to my horn. The direction of the bus did not change at all. Then I came alongside of the bus and reached a point about the middle of the bus and it was at that point that the bus increased its speed. It was at that time that I sounded my horn for the second time. . . . The sounds of my horn were short blasts. I did not continue to hold the horn down nor did I push it down and hold it down. At no time did I get an acknowledgment from the driver of the bus. . . . I did not notice the bus driver turn around to look at me as I sounded my horn. He did not pull the bus over to the right but pulled it to the left immediately after I sounded my horn. The two vehicles were within four or five inches of each other. Then the bus turned suddenly to the left and I turned right off and took the ditch. The bus did not go into the ditch. I made up my mind that the bus driver would not let me by when I was alongside of the bus."

None of the other occupants of the car corroborated the plaintiff's testimony that "the bus turned suddenly to the left." John Lemmens testified that he saw no sudden movement on the part of the bus, and the farthest he saw the bus to the left of the black line was two feet. Frances Blohm testified that she did not see any sudden movement on the part of the bus. Since the jury did not consider the plaintiff's testimony credible as to the sudden turning of the bus, we may, for the purposes of this appeal, consider that the bus did not suddenly turn to the left.

(1) The evidence supports the finding that the bus was being operated to the left of the center of the traveled portion of the highway, but it does not follow that so operating the bus constituted a cause of the plaintiff's injuries. The plaintiff knew that the bus was a foot and a half over the black line when he overtook it and when he attempted to pass it.

Whatever negligence may be predicated upon the fact that the bus was being operated to the left of the black line was static, a condition rather than a cause. *Lippert v. Joseph Schlitz B. Co.* 141 Wis. 453, 124 N. W. 491; *Hendley v. Chicago & N. W. R. Co.* 198 Wis. 569, 225 N. W. 205; *Ruscsck v. Chicago & N. W. R. Co.* 191 Wis. 130, 210 N. W. 361; *Zolesky v. Briggs Loading Co.* 172 Wis. 6, 177 N. W. 871. The position of the bus on the highway could cause no injury to the plaintiff in the absence of his entering into the dangerous zone alongside of it. It is our opinion that the position of the bus on the highway did not cause the plaintiff's injuries. The answer of the jury to the effect that operating the bus to the left of the center of the traveled portion of the highway was a proximate cause of the plaintiff's injuries cannot be upheld.

(2) The finding that the driver of the bus did not give way to the plaintiff's automobile after receiving an audible signal of the plaintiff's desire to pass is supported by the evidence to this extent. The plaintiff signaled his desire to pass. The bus driver did not give way to the right. The plaintiff's horn was in good condition and capable of being heard. There is, however, no testimony to support the inference that the bus driver heard the horn. May the driver of an overtaken vehicle be found negligent upon evidence that shows that a signal was given by the driver of an overtaking vehicle, and that the overtaken vehicle does not give way to the right? In our opinion he may not. Sec. 85.16 (4), Stats. 1933, provides:

"The operator of a vehicle about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right if practical in favor of the overtaking vehicle on suitable and audible signal being given by the operator of the overtaking vehicle and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

It will be noted that the statute requires the driver of the overtaken vehicle to give way to the overtaking vehicle on

"suitable and audible signal." "Suitable," in the sense used, means appropriate under the circumstances. "Audible" means "capable of being heard. Actually heard." Webster's New International Dictionary (2d ed.). Is a signal suitable and audible which is not heard by the driver of the overtaken vehicle? Does the driver of an overtaken vehicle owe any duty to give way to the right unless and until he hears the signal of the overtaking vehicle or is otherwise advised or informed of the approach of such a vehicle and of the desire of the overtaking vehicle to pass? In our view, "a suitable and audible signal" is not such unless it is heard. The driver of an overtaken vehicle owes no duty to give way to an overtaking vehicle until the signal of the latter is heard by him. In *Moen v. Madison Railways Co.* 215 Wis. 248, 254 N. W. 641, an action involving a collision between a fire truck and a streetcar, it was said:

"From this it appears that, under the pleadings and the questions submitted, to make the motorman guilty of negligence for not stopping the streetcar before he reached the intersection, he must have heard the gong of the fire truck, or have done something, or omitted doing something, which prevented him from hearing it. There was no evidence whatever of any act or omission of the motorman that prevented his hearing the gong. Thus if in fact the motorman did not hear the gong he was not negligent."

See also the same case, 199 Wis. 168, 171, 225 N. W. 821, in which it was held that the complaint was insufficient because it failed to allege that the motorman heard the gong of the approaching fire truck. The law of the *Moen Case* is applicable here and is in accord with the holdings of other courts.

"The driver of an autotruck along a public highway is not held to the same degree of care in observing those who may wish to pass him coming from the rear, as in front, and is not required to turn to the right for such purpose, unless he is apprised by the one who wishes to pass, by proper signal,

of his intention to do so." (Headnote.) *Dreher v. Divine,* 192 N. C. 325, 135 S. E. 29.

In *Gautier v. Lange,* 89 Misc. 372, 151 N. Y. Supp. 902, 903, the following instruction was held proper and necessary:

"That plaintiff was obliged, as soon as practicable after knowing of the presence of the car of the defendant, to turn and yield him the road."

The fact that the driver of a vehicle fails to give way to one passing from behind is not negligence unless the road is of sufficient width to permit passing and the forward driver knows, or ought to have known, of the purpose to pass. He is not bound at his peril to know that another is desirous of passing. *Dunkelbeck v. Meyer,* 140 Minn. 283, 167 N. W. 1034. The driver of the front vehicle upon hearing a signal of a rear vehicle, indicating a desire to pass, should turn to the right, if conditions are favorable to such turning. *Watkins v. Byrnes,* 117 Kan. 172, 230 Pac. 1048. The duty of the driver of a forward car to turn to the right exists only after request or equivalent notice that an approaching car desires to pass. *Morrison v. Clark,* 196 Ala. 670, 72 So. 305; *Mark v. Fritsch,* 195 N. Y. 282, 88 N. E. 380, 22 L. R. A. (N. S.) 632. If the driver of the rear car wants to pass, he must not only sound his horn, but before he attempts to pass he must be reasonably assured that the man ahead knew he was behind and heard the request and accorded the right of way before the driver of the car ahead can be charged with negligence in failing to give the right of way by reason of a usual use of the roadway. *Government Street Lumber Co. v. Ollinger,* 18 Ala. App. 518, 94 So. 177.

In this action the bus driver testified positively that he did not hear the plaintiff's horn and did not know that the plaintiff desired to pass. To the same effect was the testimony of the only passenger of the bus produced at the trial. There is nothing in the testimony of the plaintiff or of any of his wit-

nesses which permits the inference that the bus driver heard the plaintiff's horn or knew that the plaintiff was desirous of passing. Neither the plaintiff nor his witnesses testified to anything observed by them which would indicate that the bus driver had heard the signal or otherwise knew of the plaintiff's desire to pass.

(3) What has just been said respecting the duty of an overtaken vehicle to give way to an overtaking vehicle is also applicable to the finding that the driver increased the speed of the bus after receiving an audible signal. It would be unreasonable to hold that a driver of an automobile is negligent because he inadvertently increases the speed of his vehicle at a time when another vehicle is attempting to pass him. Negligence cannot be predicated upon a mere increase of speed by the driver of an overtaken vehicle unless he has heard a signal or otherwise knows of the intention of another to pass.

In our view there is no evidence in the record to support a finding of causal negligence on the part of the driver of the bus except the testimony of the plaintiff himself to the effect that the bus was turned suddenly to the left while he was attempting to pass it. That testimony, which in our view is incredible, was apparently so considered by the jury—the triers of the fact.

Since in our opinion the plaintiff failed to prove that the defendant's bus driver was negligent in any respect which caused the plaintiff's injuries, that disposes of the plaintiff's action, and it is unnecessary to consider whether the plaintiff, in a number of respects, was negligent as a matter of law.

The accident was a most unfortunate one, but the facts are such as to permit no recovery by the plaintiff.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.