HUNTER, Appellant, vs. SIRIANNI CANDY COMPANY and another, Respondents.

*November 8—December 5, 1939.*

For the appellant there was a brief by *Crawford & Crawford* of Superior, attorneys, and *Whipple & Atmore* of Duluth, Minnesota, of counsel, and oral argument by *R. A. Crawford* and *G. W. Atmore*.

For the respondents there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

WICKHEM, J.  On May 7, 1938, plaintiff was driving a light automobile truck used for delivering gas on a two-lane black-top paved highway between Webster and Danbury, Wisconsin. The truck was overtaken by an automobile delivery truck owned by defendant and operated by its employee. In attempting to pass, defendant's truck came into collision with that of plaintiff, its front right portion colliding with the left rear corner of plaintiff's vehicle, causing the latter to overturn and resulting in serious injuries to plaintiff. Plaintiff contended that defendant's driver was negligent in failing to give an audible warning of his intention to pass, and in so managing his truck as to fail to avoid collision with plaintiff, although there was ample room on the highway for him to pass in safety. Defendant's driver claimed to have sounded his horn and to have properly managed his vehicle, but asserted that as he was attempting to pass, plaintiff's truck angled across the center line and invaded his line of travel. In view of the defendant's motion to review, we are principally concerned with the question whether all of the jury's findings are supported by the evidence. In order to affirm the order there must, of course, have been a jury question both with respect to defendant's negligence and that of plaintiff.

It will be convenient first to consider defendant's claim that there is no evidence of negligence on the part of his driver in failing to give audible warning of intention to pass plaintiff's vehicle in accordance with the requirements of sec. 85.16 (1) and (4), Stats. These subsections read as follows:

"(1) The operator of an overtaking motor vehicle not within a business or residence district shall give audible warning with his warning device before passing or attempting to pass a vehicle proceeding in the same direction."

"(4) The operator of a vehicle about to be overtaken and passed by another vehicle approaching from the rear shall

give way to the right if practical in favor of the overtaking vehicle on suitable and audible signal being given by the operator of the overtaking vehicle and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

The evidence on this point by plaintiff's witnesses was by two passengers riding in the cab of plaintiff's truck. Both testified that the windows on the truck were open and that neither heard any horn or other warning. There is also testimony that plaintiff had a conversation with the driver some time after the accident, and that the driver said, "I blew my horn, but I did not think you heard it." Defendant's driver testified positively that he sounded the horn several times. We are satisfied that there was no issue of fact upon this item of alleged negligence. Plaintiff's evidence is purely negative because it does not appear that the witnesses who gave it were directing their senses and attention to determine whether the event was about to occur, and hence were not in a position to positively testify that it did not occur and did not so testify. *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581.

Defendant's next contention is that there was no evidence of negligent management and control by defendant's driver, but this question is so intimately related to the question of plaintiff's negligence that it will be convenient to consider the latter first. The testimony as to plaintiff's line of travel was as follows: The county traffic officer, who came to the scene of the collision shortly afterward and while the vehicles were still there, testified that the wheel tracks of plaintiff's truck were on the left side of the marked center line of the highway for about fifty feet; that they were about six inches to the left of such center line; and that these tracks then cut across the right side of the road where the truck went into the ditch. This witness was produced by plaintiff. Another witness, a farmer living some sixty rods north of the accident, went immediately to the place of the accident and saw the tracks of

plaintiff's truck to the left of the center line. His son testified to the same effect. Plaintiff was so badly injured that he claimed to remember nothing about the matter, although at one point he inconsistently testified that he was driving on his own right-hand side of the road all the time. For the plaintiff, Lois Johnson, riding in plaintiff's truck and sitting in the middle between plaintiff and one Hills, the other passenger, testified that the plaintiff's truck kept to its own side of the road. Hills testified at one point that the plaintiff's truck kept to its own side of the road, but qualified this by stating that he was not in a position to observe where the left wheels of plaintiff's truck were. Miss Johnson, after the accident, had signed a statement in which she stated that she could not positively state where the wheels of the plaintiff's truck were, and it was possible that they might have been slightly over the center line.

Upon this record it must be held that there was no jury question with respect to plaintiff's driving his truck to the left of the center line of the highway. There is no dispute in the evidence as to the location of the tire marks of plaintiff's truck on the left or west side of the road. The location of these tire marks is positively testified to by one of plaintiff's witnesses and two of defendant's, all of whom were disinterested, unimpeached, and uncontradicted by any direct evidence. The jury was not entitled to disbelieve this evidence, and it must be taken as a verity. So regarded, it establishes physical facts with reference to the location of plaintiff's truck as against which the conclusions of plaintiff's witnesses that plaintiff at all times operated his truck on the east or right-hand side of the road cannot, under familiar and elementary rules, raise an issue of fact. *Zenner v. Chicago, St. P., M. & O. R. Co., supra.* Hence, we must regard it as an established fact that for at least fifty feet before turning his truck to the right-hand ditch, plaintiff's truck was to some extent upon the west or left side of the center line. The ques-

tion is what materiality this has in the present controversy. If all plaintiff did was consistently to maintain a line of travel some six inches over the center line of travel, leaving to defendant plenty of room to pass, then there was presented to defendant a fully visible static condition, and if defendant drove his vehicle into plaintiff's under such conditions, his was the only causal negligence in the case.

In this connection the case of *Swinkels v. Wisconsin Michigan Power Co.* 221 Wis. 280, 267 N. W. 1, is cited. In that case plaintiff was driving his automobile behind defendant's motorbus which he had overtaken. Plaintiff claimed to have sounded his horn and proceeded to pass the bus. He testified that the bus was operating to the left of the center line, and that as he drew alongside the driver of the bus, without warning, turned his vehicle to the left and forced plaintiff's car off the pavement. The jury found defendant guilty of operating its bus to the left of the center, in not giving way to plaintiff's vehicle, and in increasing its speed after receiving a signal of plaintiff's desire to pass. Plaintiff was found not guilty of negligence. This court held that the mere driving of defendant's bus to the left of the center of the highway was a static condition and not a negligent cause of the accident since it could offer no hazards to plaintiff unless plaintiff elected to pass. It was further held that there being no evidence that the operator of the bus heard the signal, he had no obligation to yield to plaintiff's car or to maintain a consistent rate of speed. It will be noted that the jury in the *Swinkels Case* did not find that there had been any sudden angling over or invasion of the left side of the highway. The case involved the situation where the vehicle in front was consistently maintaining a position somewhat to the left of the center of the highway. It must be held that so far as this case involves the mere driving by plaintiff slightly to the left of the center line, the *Swinkels Case* is decisive of the fact that such negligence could not be a cause of the collision. If that was the situa-

tion, it was open and visible to defendant and he elected to pass under conditions which gave him plenty of room so to do, and his would be the sole causal negligence if a collision occurred. If, however, as testified by defendant's driver, plaintiff was maintaining his proper position on the right or east side of the road and after defendant had commenced to pass suddenly swung into his path, quite a different situation would be presented. Plaintiff's duty to give way to defendant's truck is, of course, conditioned upon the circumstances detailed in the *Swinkels Case,* and as heretofore stated, the mere failure to operate on the right or east side of the highway would not of itself have constituted the violation of a duty to a passing vehicle. However, a sudden veering to the left without warning or observation would constitute negligence even if no signal or warning was given by the passing car. If such was the situation here, while defendant could also be guilty of negligent management, plaintiff's negligence was capable of being a cause or even the sole cause of the collision. That is why a consideration as to defendant's negligent management and plaintiff's manner of driving are so bound together as to require that they be considered together. The question is, What does the record furnish as the basis for inferences upon this issue?

Defendant testified flatly and directly to the fact that plaintiff was driving to the right or east of the center line until the vehicles were nearly alongside each other, and that then plaintiff veered suddenly to the left, forcing defendant's truck out onto the shoulder where it left plain tire marks of its presence; that in spite of the fact that defendant's truck was driven as far to the left as it could safely be driven, the vehicles came together either because that was not far enough to avoid the collision or because defendant was compelled to move somewhat to his right to avoid a post. On the other hand, plaintiff's evidence is substantially to the effect that there was no sudden veering and that plaintiff's truck main-

tained about the same position on the highway at all times. The evidence as to the location of the wheel marks of plaintiff's truck has heretofore been discussed and has been treated under the circumstances as a verity. This evidence does not put the wheels of plaintiff's truck more than six inches over the center line at any point of the fifty feet during which these marks are visible upon the pavement. While the tire marks indicate that at some point in the course of travel plaintiff's truck was over the center line, they do not support defendant's testimony that there was any sudden veering, nor do they render impossible or contrary to the physical facts plaintiff's testimony that there was no such sudden angling or veering. On the other hand, they do not as a matter of law constitute physical facts which support plaintiff's testimony upon the point or render defendant's testimony of a sudden veering incredible under the physical facts. One reason for this is that there is some uncertainty in the evidence as to the precise place where the accident occurred. It is not impossible upon the record that the invasion of the west side by plaintiff did not take place until after the impact. In this event, it is not beyond possibility that the slight invasion of the west side of the highway was a nonnegligent consequence of the impact itself. It is, of course, also possible that there had been, at some point before these marks began, a sudden veering or angling by plaintiff onto the west side of the highway. Thus, we have an issue of fact, so far as the oral testimony is concerned, whether plaintiff's truck suddenly invaded the west side of the road, and the evidence on neither side of this issue is so conclusively against the physical facts as to prevent the issue from arising. It is our conclusion, therefore, that there was an issue of fact in this case neither submitted to nor determined by the jury which was essential to the proper determination of this cause. In view of this, we hold that there should be a new trial in the interests of justice and without regard to the correctness of the trial

court's conclusion. Had the trial court approved the verdict and entered judgment, the party in whose favor the judgment was entered might have been entitled to the statutory presumption that this issue had been determined favorably to him. The trial court having granted a new trial, the presumption is inapplicable. This leaves the principal issue in the case undisposed of, and in that state of the record a new trial offers the only just solution.

*By the Court.*—Order affirmed.