Topham, Respondent, vs. Casey and another, Appellants.

*November 6—December 2, 1952.*

For the appellants there were briefs by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Harry F. Knipp,* all of Janesville.

*Crosby H. Summers* of Janesville, for the respondent.

FRITZ, C. J.   On July 25, 1951, the defendant Harold Casey was driving his automobile southward at thirty-five to forty miles per hour, in the west lane of the three-lane, north-south Highway 51, which was in good driving condition, with shoulders available for travel.  He testified that when he crossed a bridge about six hundred feet north of the place of the collision, he observed plaintiff's truck following him from about one mile away.  Plaintiff testified that defend-

ant drove in the west lane up to just before the place of collision. Defendant testified that he had swerved into the center lane shortly after he crossed the bridge, and continued in that lane until the place of collision, and that when he entered the center lane, defendant slowed down his speed preparatory to turning left at an intersection into a side road. Plaintiff testified he noticed no such slowing down of speed; that he was following defendant's car at a speed of fifty to fifty-five miles per hour until plaintiff tried to pass it at the intersection of the side road with the three-lane highway; that defendant drove in said west lane at all times until he suddenly started to turn left into the side road at said intersection; that when plaintiff approached defendant's car near said intersection, and was about to pass it, plaintiff blew his horn twice as a signal of his intention to pass defendant's car. Defendant denied that plaintiff blew his horn, because he did not hear any horn; that he would have heard it if one had been sounded; the window of his car nearest his driving seat being open about two inches. The left side of defendant's car collided with the right side of plaintiff's truck. Defendant claims that the point of contact was at the rear of his car, but plaintiff claims that it was near the front. Defendant testified he did not see plaintiff's truck again until the collision occurred because he was traveling in the center lane, and the truck could pass in the west lane. Plaintiff claims defendant was in the west lane until he suddenly turned left, and should have looked before so turning. It is undisputed that the collision occurred at the intersection of the side road with Highway 51, just as defendant started to make the turn into the side road. The point of the collision between the two vehicles was either at the north line of the intersecting road, or within a foot north of that line.

At common law, there was no limitation on a driver's right to pass at an intersection. The only statute limiting that right is sec. 85.16 (6), Stats., which provides:

"It shall be unlawful for the operator of any vehicle to overtake and pass any other vehicle proceeding in the same direction at any steam, 'gas, or electric railway grade crossing or at an intersection of highways, unless permitted to do so by a traffic officer or upon highways which are properly marked by traffic lanes."

The term, "traffic lane," is defined as that portion of a road paralleling the center line of the roadway, having a width of not less than seven and not more than ten feet, whether or not such portion is indicated by marks or markers. Sec. 85.10 (34), Stats.

In the case at bar, it is conceded that the lanes of Highway 51 were properly marked. Upon highways that are divided longitudinally by a parkway, viaduct, wall, or other form of division, vehicles shall keep to the right of said division unless directed to do otherwise by an official traffic sign or signal or by a traffic officer. Sec. 85.15 (3), Stats. If the highway is marked by lanes, then, by reason of said sec. 85.15 (3), if the lead vehicle had not gotten itself into a proper position for a left turn, by the time it enters the intersection, said section requires that the driver keep in his lane as he proceeds through the intersection and, because it so requires, the vehicle following has a right to rely upon it and assume that he will do so. Thus, it is the evident intent of the statutes that where highways are laned for traffic, vehicles must stay in the lanes, subject to the rights given by the "turning statutes," and that other users of the highways have a right to rely on such conduct. Sec. 85.15 (2) provides:

". . . The provisions of this subsection shall not apply upon . . . highways laned for traffic; and in all cases of the latter, vehicles traveling in marked lanes shall move in the direction permitted in such lanes."

The jury found that Topham was not negligent in respect to: (1) Management and control; (2) failing to pass at a safe distance to the left of Casey's car; (3) maintaining

a proper lookout; (4) giving an audible warning before attempting to pass another car; and (5) that he was negligent in respect to speed, but that said negligence was not causal.

The jury found that Casey was causally negligent: (1) In respect to his deviation from the traffic lane in which he was operating his vehicle without first ascertaining that such movement could be made safely with respect to other vehicles approaching from the rear; (2) in turning his vehicle to the left upon the roadway without giving a signal of his intention to turn continuously during not less than the last one hundred feet traveled by such vehicle before turning; (3) in failing to maintain a proper lookout; and (4) in failing to give way to the right in favor of the overtaking vehicle on a suitable and audible signal being given by the operator of the overtaking vehicle, but that such negligence was not causal.

In connection with said findings, the jury found that Topham was not causally negligent in any respect. The evidence duly warranted all of the jury's findings in the special verdict. When the jury, after due deliberation, returned to the courtroom with a special verdict, which was complete and perfect in all respects, it was signed by the foreman, and handed by him to the judge. The jurors acknowledged that it was their verdict, and it was then duly accepted by the judge and recorded. But immediately thereafter, the judge, on his own accord, and without any valid cause or motion by either party, erroneously directed the jurors to return to the juryroom for further deliberations in respect to question No. 5 in the special verdict. The jurors had duly followed the judge's instructions, and made their findings in answer to the questions required to be answered in the special verdict, and when the judge subsequently directed the jurors to answer question No. 5 and find some causal negligence attributable to the plaintiff, the judge erred. As the verdict when first returned by the jury was complete on its face, and sufficient to render judgment for the plaintiff, it was legal and

binding, and required only the ministerial acts of the court in accepting and filing it with the clerk, and nothing that transpired thereafter affected the verdict. As was stated in *Stricker v. Reedsburg*, 101 Wis. 457, 463, 77 N. W. 897:

". . . where the jury have found upon all issues submitted to them, the court is not empowered to call their attention to real or supposed inconsistencies in their answers, and again send them out to change their answers or to make them consistent."

Defendant's counsel contends it was prejudicial error to exclude his cross-examination in respect to Topham's income-tax returns for 1950, in regard to a loss of $647.22 in his business for 1950. On direct examination, he testified that prior to the accident, he was engaged in operating a business making steel brackets for scaffolding purposes; and that prior to engaging in business for himself, he had worked for Fairbanks-Morse Company in Beloit as a machinist; that during the time he was laid up from the accident he could have received $1.70 per hour for a forty-hour week; and that he considered his loss of wages at $100 a week for eight weeks. Topham, having established by competent evidence, that he was a machinist and engaged in the business of making steel brackets by using his skill as an experienced machinist, and that the prevailing wage for qualified machine operators was $1.70 per hour for a forty-hour week, and that his earning capacity was impaired for eight weeks, the jury's award of $500 for loss of earnings must be sustained, even if it were proved that the operation of his business was not profitable. A similar situation arose in *Schultz v. Miller*, 259 Wis. 316, 327, 48 N. W. (2d) 477. Schultz was engaged in the business of slaughtering animals and cutting up the meat and selling it. There was no proof as to whether his operation of that business was profitable, but Schultz did show that he was an experienced butcher, capable of slaughtering animals, and doing all the things that a butcher is

ordinarily called upon to do, and that the prevailing wages in the community for butchers so qualified were from $70 to $75 per week. The court held that a jury is permitted to allow as damages for loss of earnings for the period an injured person is unable to perform his usual work, such sum as the jury finds he was reasonably capable of earning at his trade or occupation.

The total amount assessed by the jury as plaintiff's damages for his personal injuries, loss of earnings, hospital and medical expenses, and the damage to his truck and loss of use thereof was $2,850. The court's jurisdiction was limited to amounts not in excess of $2,500. As the total amount assessed by the jury was $350 in excess of the court's jurisdiction of $2,500, the court reduced the amount of plaintiff's recovery to $2,500, and ordered that judgment be entered against defendant for that amount, together with the costs and disbursements of the action.

*By the Court.*—Judgment affirmed.