**WERNER TRANSP. CO. v. ZIMMER-MAN et al.**

No. 10639.

United States Court of Appeals Seventh Circuit.

Feb. 6, 1953.

Before DUFFY, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiff, Werner Transportation Company, brought this action to recover damages resulting from a collision between its tractor-trailer unit and an automobile owned by the defendant Nathan Zimmerman. Negligence of the defendant Gordon Folkers, who was driving the automobile, as the agent of Zimmerman, was alleged to have caused the mishap. The defendant State Farm Mutual Automobile Insurance Company was the insurer on a liability policy held by Zimmerman.

The case was submitted to a jury for a special verdict. The jury found that both Folkers and Oscar B. Colvin, the driver of plaintiff's vehicle, had been negligent and that their combined negligence had caused the collision. The jury attributed 75 per cent of such negligence to Folkers and 25 per cent to Colvin. The District Court thereupon entered judgment in favor of the plaintiff for 75 per cent of the amount of damages which the parties had stipulated as the damages sustained by plaintiff. From this judgment the defendants prosecuted this appeal.

The collision occurred July 22, 1949, at about 12:30 A. M., on U. S. Highway 12, between Elkhorn and Lake Geneva, Wisconsin. Between these cities Highway 12 runs generally in a northwesterly and southeasterly direction. The paved portion of the highway is 22 feet in width. On the east side of the paved portion, or what would be the left side to one traveling to the southeast, there is a gravel shoulder 8 to 10 feet wide. In the open country a short distance outside of Lake Geneva, Town Road joins Highway 12 from the north at an acute angle. Town Road flares out to a width of about 45 feet at its intersection with Highway 12, although the blacktopped surface width of Town Road itself is only 20 feet.

Just prior to the accident the defendants Folkers and Zimmerman, accompanied by two young ladies, were proceeding southeasterly on Highway 12 towards Lake

---

J. Arthur Moran, Delavan, Wis., for appellant.

Gerald P. Hayes, John A. Kluwin, Milwaukee, Wis., for appellee.

Geneva in Zimmerman's car, with Folkers driving. It was their intention, upon reaching the intersection, to make a sharp left turn from the highway onto Town Road. Colvin likewise was traveling southeasterly towards Lake Geneva, but to the rear of the Zimmerman automobile. He was driving the plaintiff's vehicle, a tractor-trailer combination 45 feet in length and weighing 26 tons. Although Colvin had traveled this route many times previously, he did not know of the intersection at which Town Road joins Highway 12.

Colvin was driving 40 to 50 miles per hour, not an unreasonable speed, but fast enough to overtake the Zimmerman car which was proceeding at a more leisurely pace. As Colvin drew abreast of the Zimmerman car, in an attempt to pass, Folkers turned to the left and the collision between the two vehicles occurred.

There is virtually no dispute concerning the facts as so far stated. However, the relative location of the collision to the intersection of the two roads and the nature of other events immediately preceding the collision are the subject of sharp disagreement.

The plaintiff's driver, Colvin, testified that when he was 250 to 300 feet from the intersection and had approached to within 50 feet of the rear of the Zimmerman automobile, he started to pull into the left lane to pass; that as he shifted to the left lane, he blinked his lights two or three times from low beam to high beam and gave two blasts with his electric horn which made a loud blast; that the automobile ahead was in the right lane of traffic, traveling at an estimated speed of 30 to 35 miles per hour; that its speed did not appear to be decreasing; and that he saw no signal of any kind by the driver of the automobile indicating an intention to turn to the left.

Colvin testified further that as he pulled alongside the Zimmerman car, the tractor-trailer combination was completely in the left lane of traffic, and the automobile was in the right lane, the two vehicles being then separated by a distance of about four feet; that when both vehicles were about 100 feet northwest of the intersection, the auto-mobile suddenly turned into the left lane and into the tractor, striking it in the area between the right hand door of the cab and the trailer; and that until the car suddenly turned to the left, it had not deviated from the right lane of traffic.

Colvin also said that the tractor when struck went off the road and onto the shoulder to the left, then across the intersection, stopping on the left side of the highway where it "tipped over in the ditch" on the far side of the side road. Colvin stated that the tractor went off the pavement and onto the shoulder about 75 feet from the intersection.

The testimony of defendants' witnesses varied considerably from the testimony of Colvin. Their testimony was calculated to show the following facts: At a point nearly 500 feet northwest of the intersection, Folkers extended his arm in a signal for a left turn and began to edge from the right lane into the left lane of traffic. At this time the automobile was moving about 40 miles per hour, and he took his foot off the accelerator so as to reduce speed. Both Folkers and Zimmerman previously had seen the lights of another vehicle, far to the rear. Their automobile was equipped with both an inside and an outside rear view mirror, and Folkers again noticed those lights as he shifted to the left side of the highway, but they were still quite some distance back. His purpose in moving into the left lane before reaching the intersection, where he planned to turn onto Town Road, was to leave the other side of the highway clear for the vehicle which he knew was approaching from the rear.

At a point about 250 feet from the intersection Folkers had completed his gradual shift to the left lane. Folkers then applied the brakes to further reduce the speed and continued driving on the left side of the highway towards the intersection, all the while extending his arm to signal his intention to turn to the left. By the time the automobile arrived at the near edge of the flare forming the intersection, it had slowed to 10 or 15 miles per hour and Folkers had pulled in his arm preparatory to turning. At that instant, and with the left front fender of the car even with the left edge

of the pavement, he commenced his turn to the left not knowing that another vehicle was near. The collision then occurred. Folkers stated that plaintiff's tractor-trailer unit must have. been traveling entirely on the left hand shoulder of Highway 12 for the accident to have happened in this manner.

Within the last 450 feet before they arrived at the edge of the intersection neither Folkers, Zimmerman, nor their two companions observed any lights from the plaintiff's vehicle, nor did any of them hear a horn. As appears from their version of the events, the defendants fix the point of impact at the edge of the intersection joining the Town Road with Highway 12.

In answer to the questions propounded in the special verdict, the jury found that the defendant Gordon Folkers was not negligent with respect to giving an appropriate signal of his intention to turn left; but that he was negligent with respect to maintaining a proper lookout, management and control, and the manner in which he made a left turn; and that such negligence was an efficient cause of the collision and of plaintiff's damages. The jury also found that the plaintiff's driver, Oscar B. Colvin, was not negligent with respect to passing at an intersection and giving an audible warning before attempting to pass; but that he was negligent with respect to maintaining a proper lookout and management and control; and that such negligence was an efficient cause of the collision and of plaintiff's damages. As we have stated, the jury attributed 75 per cent of the total negligence to Folkers and 25 per cent to Colvin.

■ The defendants present two principal arguments to this appeal. It is complained, first, that there is no credible evidence in the record to support an inference that an audible warning was given by the plaintiff's driver before undertaking to pass the Zimmerman car. That such a warning was required is provided by Wis.Stat. 85.16 (1), 1949, which states:

"The operator of an overtaking motor vehicle not within a business or residence district shall give audible warning with his warning device before passing or attempting to pass a vehicle proceeding in the same direction."

We do not agree with the contention of the defendants that evidence of compliance with this statute is lacking. Colvin testified that as he pulled out to pass, he gave two blasts with the electric horn. The defendants Folkers and Zimmerman both testified that no horn was blown. One of their companions also stated that no horn was blown, and the other said that she did not hear any horn. This conflict between the positive evidence of Colvin and the negative evidence of defendants' witnesses was for the jury to resolve. Certainly, the jury properly could have found that the required warning signal was given.

The defendants, however, say there is no evidence that Folkers actually heard the horn. And it is their theory that if the required warning signal is not actually heard by the driver of the overtaken vehicle, the statutory duty has not been discharged. To sustain this proposition, the defendants rely on Swinkels v. Wisconsin Michigan Power Company, 221 Wis. 280, 267 N.W. 1.

That case involved a statutory requirement, Wis.Stat. 85.16(4), 1949, that:

"The operator of a vehicle about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right if practical * * on suitable and audible signal being given by the operator of the overtaking vehicle * * *."

In the Swinkels case the plaintiff approached the defendant's bus from the rear at a time when the bus was being operated slightly over the black line marking the center of the pavement. The plaintiff undertook to pass immediately after blowing his horn, but the driver of the bus did not give way to the right, and the plaintiff claimed that as he was passing the bus, it suddenly and without warning turned to the left and forced plaintiff's car off the road and into the ditch to the left. The court, observing that there was no testimony to support an inference that the driver of the bus actually heard the horn, framed the question to be

decided as follows, 221 Wis. at page 287, 267 N.W. at page 4:

"May the driver of an overtaken vehicle be found negligent upon evidence that shows that a signal was given by the driver of an overtaking vehicle, and that the overtaken vehicle does not give way to the right?"

Answering this in the negative, and discussing, in the light of the statute and other authorities, the duty which rests with the driver of a vehicle about to be overtaken, the court stated, 221 Wis. at page 288, 267 N.W. at page 4:

"In our view, 'a suitable and audible signal' is not such unless it is heard. The driver of an overtaken vehicle owes no duty to give way to an overtaking vehicle until the signal of the latter is heard by him."

However, in that opinion, 221 Wis. at page 289, 267 N.W. at page 5, the court stated:

"The fact that the driver of a vehicle fails to give way to one passing from behind is not negligence unless the road is of sufficient width to permit passing and the forward driver knows, *or ought to have known*, of the purpose to pass." (Our emphasis.)

The jury in that case had found that the bus driver was negligent in operating his bus slightly over the center line of the highway, but that the bus was not suddenly turned to the left as claimed by plaintiff. The court pointed out that, 221 Wis. at page 287, 267 N.W. at page 4:

"Whatever negligence may be predicated upon the fact that the bus was being operated to the left of the black line was static, a condition rather than a cause. (Citing cases.) The position of the bus on the highway could cause no injury to the plaintiff in the absence of his entering into the dangerous zone alongside of it."

This left in the case the single question as to whether the driver of the bus was negligent in not turning to the right on the giving of a signal by plaintiff although the driver of the bus did not hear the signal and did not know the plaintiff was attempting to pass. While isolated statements in that opinion seem to support the plaintiff's contentions in the instant case, we must bear in mind that the court there was considering only the limits of the duty of the driver of the overtaken vehicle to take positive action in getting out of the way of the overtaking vehicle which is about to pass.

In the instant case we are concerned with the limits of the duty of the driver of the overtaking vehicle to give a signal before attempting to pass. If the driver of an overtaking automobile gives a signal which is capable of being heard by the occupants of the overtaken car we do not believe that it is necessary for the driver of the overtaking vehicle to also show that the signal was actually heard by such occupants in order to establish the fact that the overtaking driver had complied with the statute which requires an "audible signal."

In Hunter v. Sirianni Candy Co., 233 Wis. 130, 288 N.W. 766, 767, decided three years after the Swinkels case, the plaintiff, while driving his truck to the left of the center line of the highway, was involved in a collision with a vehicle owned by the defendant, whose driver was attempting to pass. One of the questions considered by the court was whether the defendant's driver was negligent in failing to give warning of his intention to pass. Two witnesses for the plaintiff, passengers who were riding with him in the truck, both stated that they did not hear any horn. There was evidence that defendant's driver stated to the plaintiff after the accident that he sounded the horn but did not think the plaintiff heard it. The driver himself testified that he sounded the horn several times. Observing that the plaintiff's evidence on the point was purely negative "because it does not appear that the witnesses who gave it were directing their senses and attention to determine whether the event was about to occur, and hence were not in a position to positively testify that it did not occur", the court stated as a matter of law that the defendant's driver was not negligent in failing to give audible warning of his intention to pass, as required by the statute. It was not questioned that the plaintiff there had not actually heard the warning. The court then proceeded to the

question of the plaintiff's negligence in operating his truck to the left of the center line of the highway. In this connection the Swinkels case was referred to and the court reiterated its holding there, stating 233 Wis. at page 136, 288 N.W. at page 769:

"Plaintiff's duty to give way to defendant's truck is, of course, conditioned upon the circumstances detailed in the Swinkels case * * *."

The defendants here complain that Colvin undertook to pass without observing anything in connection with the management of the Zimmerman automobile which would indicate that its driver was aware of his intention. But that was precisely the situation in the Hunter case. Moreover, in the case at bar there was evidence from which the jury could have properly found that the Zimmerman automobile, when approached by Colvin from the rear, was in the right lane of traffic, and that it did not deviate from that lane until it was suddenly turned to the left immediately prior to the collision. Under the circumstances as disclosed by this record, therefore, we do not believe the defendants' contention is realistic. When Folkers was already driving in a proper manner on his own side of the highway, Colvin could not have expected him to further give way to the right in acknowledgment of the warning. It is not suggested just how Colvin might have ascertained whether or not Folkers was aware of his intention to pass.

■ It is not apparent from the opinion whether the argument presented here by the defendants was considered by the court in the case of Topham v. Casey, 262 Wis. 580, 55 N.W.2d 892, decided in 1952. But there the defendant, as in the instant case, in attempting to turn into an intersecting road, turned to the left out of his lane of traffic, although on a three lane highway, and into the car of the plaintiff who was undertaking to pass. And, as in this case, the plaintiff's testimony that he sounded his horn as a signal of his intention to pass was controverted by the defendant, who said he did not hear any horn; and that he would have heard it if one had been sounded because the window of his car was open. However, the Wisconsin court held the evidence sufficient to

warrant the jury's finding that the plaintiff was not negligent in respect to giving an audible warning before attempting to pass.

We conclude that the theory advanced here by the defendants is supported neither by reason nor by the decisions of the Supreme Court of Wisconsin.

The defendants contend next that, since the jury found Folkers negligent as to lookout and as to management and control, there was a duplication of findings which rendered the jury's determination of the comparative negligence inaccurate. It is said that because of Folkers' negligent lookout in failing to observe the plaintiff's vehicle before the moment of impact, he could do nothing to avoid the collision, and, therefore, his management and control of the Zimmerman automobile was not a cause of the accident.

■ We are unable to agree with this reasoning. In this case there was evidence to support a finding that Folkers had seen the lights of plaintiff's vehicle and knew that it was following along behind him, but did not know just how far behind. In violation of Section 85.16(2) Wis.Stat., 1949, Folkers deviated from the traffic lane in which he was driving without first ascertaining that he could do so without endangering vehicles approaching from the rear. Folkers also violated Section 85.175 (1) when he turned his car to the left to turn into Town Road without determining that the turn could be made with reasonable safety and without having his automobile in a proper position on the roadway as required by Section 85.17 of the statute. Here, by his positive action, Folkers operated his car in violation of at least two sections of the Wisconsin Statutes and there was a causal connection between such violations and the collision.

To support their contentions the defendants cite Reynolds v. Madison Bus Co., 250 Wis. 294, 26 N.W.2d 653. In that case the court, in discussing the duty of motorists approaching an intersection to yield the right of way to a driver approaching the intersection from the right, said, 250 Wis. at page 305, 26 N.W.2d at page 658:

"In this connection it should be stated that if a party has violated his

duty to yield a statutory right of way at an intersection this is a separate and distinct item of negligence even though his failure has been the result of an inadequate or negligent lookout."

In the instant case it is clear that Folkers, by his positive action in deviating from his lane and in making the left turn, both in violation of applicable sections of the statute, was guilty of negligence in management and control and that such negligence is a "separate and distinct item of negligence."

In Hagen v. Thompson, 251 Wis. 484, 29 N.W.2d 515, and in Crawley v. Hill, 253 Wis. 294, 34 N.W.2d 123, the court held that where a motorist, because of negligent lookout, fails to see a pedestrian crossing the street in time to take any steps to avoid hitting him, the failure to take such steps does not constitute negligent management and control. In neither of these cases, however, was there positive action by the motorist in violation of a statutory duty.

Marchant v. Franz, 259 Wis. 289, 48 N.W.2d 620, also cited by the defendants on this point is also distinguishable on the facts. There an automobile was being driven along the highway behind a truck. The truck suddenly stopped on the concrete and the driver of the automobile claimed that he did not see that the truck was stopped in time to avoid a collision. Apparently there was no real basis in that case for a finding of negligent lookout. The court said, however, that the findings of the jury that the driver of the automobile was negligent both as to lookout and as to management and control were duplicative and based its holding on the Crawley case where it was clearly shown that the only causal negligence was with respect to lookout.

In Egan v. Wege, 260 Wis. 118, 50 N.W. 2d 457, the court held that such answers were not in duplication where there was evidence to support findings that there had been negligence as to lookout and that the defendant by proper control and management of his car, after he saw the situation, could have avoided the collision. The court in that case distinguished the Marchant case, 260 Wis. at page 123, 50 N.W.2d at page 459, "in the fact that there is evidence here * * * which supports the jury's apparent conclusion that by proper control of his car defendant could have avoided the collision."

■ The defendants apparently do not seriously contend that the findings of the jury that Folkers was negligent as to the manner in which he made a left turn was duplicative. It seems that the evidence is more than sufficient to support a finding that in making the left turn he violated Wis.Stat. 85.17(2), 1949, which provides that:

"The operator of a vehicle intending to turn to the left at an intersection * * * shall make such turn from the traffic lane immediately to the right of and next to the center of the highway and shall pass immediately to the left of the center of the intersection, passing as closely as practicable to the left of the center of the intersection * * *."

The testimony of Colvin tended to show that Folkers undertook to shift into the left lane of traffic, preparatory to turning, at least 100 feet away from the intersection. The defendants attempted to show that he did so nearly 500 feet away. Under either version of the circumstances, therefore, the evidence shows conclusively that Folkers was attempting to turn in a manner contrary to the statute.

■ Nor do we believe that there is any merit to the two other contentions urged by the defendants. Whether the plaintiff's driver was guilty of negligence with respect to passing the Zimmerman car at an intersection was a question for the jury to determine. The negative answer of the jury was clearly supported by the evidence. We think the remarks made by plaintiff's counsel in his closing argument to the jury were not so improper as to be prejudicial to the defendants' case and the record discloses no timely and appropriate objections to such remarks by the defendants' counsel.

The judgment of the District Court is affirmed.