BEHR, Plaintiff and Respondent, vs. LARSON and another, Defendants and Appellants.

HARDER, Plaintiff and Respondent, vs. LARSON and another, Defendants and Appellants: BEHR, Impleaded Defendant and Respondent.

NERDAHL, Plaintiff, vs. HARDER and others, Defendants and Respondents: LARSON and another, Defendants and Appellants.

*April 10—May 7, 1957.*

For the defendants-appellants there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*

For the plaintiffs-respondents there was a brief by *Gaynor & Hughes* of Plymouth, attorneys, and *James W. Lane* of Milwaukee of counsel, and oral argument by *Mr. James R. Hughes* and *Mr. Lane.*

For the defendants-respondents there was a brief by *Holden & Schlosser* of Sheboygan, and oral argument by *Wayne W. Schlosser.*

BROADFOOT, J.    Larson left his home in Milwaukee to attend a dance at Schmit's pavilion south of the intersection of State Trunk Highway 141 and County Trunk Highway Q. His wife sat in the front seat of the car with him and two nieces and a nephew, all adults, occupied the rear seat of the car. Larson described the area around the pavilion by stating that at the south line of Highway Q and proceeding in a southerly direction the first building is a garage with a gasoline pump in front of it. South of the garage is a small empty lot. The Schmit house is located south of the empty lot, then comes the tavern, then the dance hall, and then a number of motel cottages. Larson testified that he drove north on State Trunk Highway 141, a three-lane highway, from Milwaukee. About 800 feet south of the intersection with Highway Q there is the crest of a hill. After crossing the crest of the hill, and about 200 feet below it, he turned left into the center lane after giving a left-turn signal

with his hand and arm. His car was not equipped with directional signals. He was looking for a parking place in front of one of the buildings on the west side of the highway. He selected a parking spot next to the gasoline pump in front of the garage and turned to his left without further signal. He testified that he looked in his rear-vision mirror just before making the turn but did not see the lights of the tractor-trailer unit until it was opposite his left rear wheel. The collision between the right front of the tractor and the left front of the automobile occurred immediately.

Behr had driven the tractor-trailer unit to Chicago and was on his return trip to Plymouth. His cousin was his helper on the trip and rode in the cab with him. He was traveling north on State Trunk Highway 141. His testimony is that as he came over the crest of the hill he saw the Larson automobile parked or stopped on the east side of the highway with the left wheels on the concrete and the right wheels on the shoulder. Another car was proceeding ahead of him in a northerly direction and it passed the Larson car. He testified that he signaled with his lights, blew his horn, and turned to his left into the center lane and proceeded north. As he approached the Larson car it turned suddenly to the left. He again blew his horn, flashed his lights, set his brakes, and swung to his left to avoid the collision. The Larson car was spun around and after the collision it faced in a northwesterly direction. The tractor-trailer stopped a short distance north of the intersection, the tractor facing in a northwesterly direction. Following the collision the trailer jackknifed and struck the cab with such force that Behr was thrown from the cab and the tractor wheels ran over him, inflicting serious injuries.

Prior to the accident a county traffic policeman was traveling south in the west lane of the highway. He testified that he saw the Larson car either stopped or proceeding very slowly on the east side of the highway and that he saw a car

pass the Larson car and proceed north. He saw the tractor-trailer unit flash its lights and turn into the center lane and saw the Larson car turn abruptly in front of the tractor-trailer unit.

The appellants had requested two additional questions to be included in the special verdict with respect to the negligence of Behr. The first one was whether Behr was negligent with respect to keeping a proper lookout and the second to inquire with respect to his negligence in passing Larson's automobile under the conditions then existing. In connection with the passing question they also requested an instruction based on sec. 85.16 (6), Stats. 1951, which read as follows:

"It shall be unlawful for the operator of any vehicle to overtake and pass any other vehicle proceeding in the same direction at any steam, gas, or electric railway grade crossing or at an intersection of highways unless permitted to do so by a traffic officer or upon highways which are properly marked by traffic lanes; . . ."

The appellants contend that the court erred in failing to include those questions in the special verdict and to give the requested instruction. It is first contended that it was necessary to submit the questions because they had pleaded such negligence by Behr. The mere fact that issues are raised by the pleadings does not mean that they must be included in the special verdict. In a recent opinion, *Bell v. Duesing,* ante, pp. 47, 53, 80 N. W. (2d) 821, this court said:

"In drafting a special verdict the trial court must first consider the issues raised by the pleadings. He should then eliminate from the issues so raised those that are determined by the evidence on the trial by admissions, by uncontradicted proof, or by failure of proof. Only those remaining should go to the jury."

The appellants next contend that upon cross-examination Behr testified he was probably engaged in conversation with his cousin prior to the accident and that just before the col-

lision his cousin said "Look out." It is contended from these admissions the jury might draw inferences that Behr was not looking. Drivers are not prohibited from conversing with other persons in a vehicle and the fact that they are doing so would not justify a legitimate inference that they were not looking ahead and seeing everything to be seen in front of the vehicle. With a collision inevitable, as here, the fact that the passenger in a vehicle shouts "Look out" would not justify such an inference. It was a natural exclamation under the circumstances. Behr had testified that he had the Larson car under observation at all times after he came over the crest of the hill. His description of the movement of the Larson automobile was corroborated by the testimony of the traffic officer. From a careful reading of the record we would have been unable to permit an affirmative answer to the lookout question to stand had it been submitted.

The appellants contend that Behr violated the provisions of sec. 85.16 (6), Stats. 1951, which are quoted above, by arguing that the collision occurred within or at the intersection. It is true that the word "at" often is defined as "near." However, the statute was a penal statute, the penalty appearing in sec. 85.91. This requires a strict construction of the word "at" and without evidence that the collision occurred within the intersection no violation was shown. Neither vehicle reached the intersection prior to the collision and Larson's automobile did not reach the intersection either before or after the collision. As this was admittedly a three-lane highway, it is probable that passing within the intersection was permissible under the rules stated in *Topham v. Casey,* 262 Wis. 580, 55 N. W. (2d) 892. It is unnecessary, however, to determine that question. The appellants injected into the record some evidence that the highway up to a point some 10 or 15 feet south of the intersection was zoned for no passing in either direction. When such testimony was first offered there was an objection to it on the ground that

it was not material to the issues in the case since it had not been pleaded that Behr was negligent in attempting to pass in a no-passing zone. The trial court admitted the testimony over the objection, although the objection was valid and should have been sustained. Later other evidence to the same effect came in without objection but it is still not an issue in the case and the testimony is immaterial.

It is further contended that the medical proof was insufficient to establish whether a chest complication suffered by Behr was due to an embolism or to pneumonia. From the first X rays taken it was difficult to determine the cause of the chest condition. However, after the doctor had treated the patient throughout, it was his opinion that his disability was caused by a blood clot from a damaged pelvic vein going to the lung to form a pulmonary embolism. The only error we find was when the court permitted the plaintiff Behr, over objection, to testify that a piece of bone got into the blood stream and that formed a blood clot that got into his lung. This was clearly improper testimony but cannot be said to be prejudicial in view of the medical testimony.

It is further contended that the plaintiff Behr did not establish his loss of wages by proof to the required degree of certainty. We can find no error in that regard. There was testimony which the jury was at liberty to believe that would justify the award of damages for that item. No passion or prejudice is evident and in fact the award for pain and suffering was conservative to say the least, and certainly the award for permanent injuries was well supported by the evidence.

The appellants finally contend that the instruction given by the trial court as to Larson's duty to observe the headlights of the truck was unwarranted and prejudicial. We do not so find, but the instruction under the circumstances could not be held to be prejudicial because if Larson had not been found causally negligent as to lookout the result would have

been the same, since no negligence was found on the part of Behr. The verdict is supported by competent testimony and the verdict supports the judgments appealed from.

*By the Court.*—The judgment in each case is affirmed.